## S11G0638. MCREYNOLDS v. KREBS.
### (725 SE2d 584)

NAHMIAS, Justice.

Lisa Krebs sued Carmen McReynolds and General Motors (GM) for serious injuries she received when McReynolds's car struck the GM vehicle in which Krebs was a passenger. McReynolds cross-claimed against GM for contribution and set-off. After Krebs settled with GM for an undisclosed amount, the trial court dismissed McReynolds's cross-claims, reasoning that OCGA § 51-12-33, as amended by the Tort Reform Act of 2005, had abolished joint and several liability and replaced contribution and set-off with a process of apportionment of damages among multiple tortfeasors. The jury found McReynolds liable for Krebs's injuries and awarded $1,246,000.42 in damages. The trial court entered judgment against McReynolds for that full amount and denied her motion for new trial.

McReynolds appealed the trial court's rulings on the cross-claims and other matters, but the Court of Appeals affirmed. *McReynolds v. Krebs*, 307 Ga. App. 330 (705 SE2d 214) (2010). We granted certiorari to consider two questions: (1) Did the Court of Appeals correctly construe OCGA § 51-12-33 to require a trier of fact to apportion an award of damages among multiple defendants when the plaintiff is not at fault?; and (2) Did the Court of Appeals correctly find that McReynolds's insurer made a counteroffer in response to Krebs's settlement demand? Having decided that the answer to both questions is yes, we affirm.

1. McReynolds contends that the trial court and the Court of Appeals erred in construing OCGA § 51-12-33 to bar her cross-claims against GM for contribution and set-off. It is undisputed that Krebs was not at fault in the accident. McReynolds argues that OCGA § 51-12-33 requires apportionment of damages only where the plaintiff is partially at fault, and therefore the statutory apportionment scheme does not apply to this case and her cross-claims were viable. We disagree.

(a) As amended by the Tort Reform Act of 2005, Ga. L. 2005, pp. 15-16, § 12, OCGA § 51-12-33 mandates apportionment of damages as follows:

> (a) Where an action is brought against one or more persons for injury to person or property and the plaintiff is

to some degree responsible for the injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault.

(b) Where an action is brought against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

Subsections (c) through (g) address apportionment of fault to non-parties, preserve existing defenses or immunities not expressly altered by OCGA § 51-12-33, and prohibit recovery where the plaintiff is 50 percent or more responsible for the injury or damages claimed.[1]

McReynolds's argument rests on subsection (a)'s limitation to cases where "the plaintiff is to some degree responsible for the injury

---

[1] Subsections (c) through (g) provide as follows:

(c) In assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit.

(d) (1) Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault.

(2) The notice shall be given by filing a pleading in the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing the nonparty to be at fault.

(e) Nothing in this Code section shall eliminate or diminish any defenses or immunities which currently exist, except as expressly stated in this Code section.

(f) (1) Assessments of percentages of fault of nonparties shall be used only in the determination of the percentage of fault of named parties.

(2) Where fault is assessed against nonparties pursuant to this Code section, findings of fault shall not subject any nonparty to liability in any action or be introduced as evidence of liability in any action.

(g) Notwithstanding the provisions of this Code section or any other provisions of law which might be construed to the contrary, the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed.

or damages claimed." She acknowledges that subsection (b) does not contain this limiting language but argues that the entire Code section is inapplicable unless subsection (a) is satisfied. This construction of OCGA § 51-12-33 effectively imports subsection (a)'s limiting language into the six following subsections, including subsection (b). However, the statute nowhere states that the remaining subsections are dependent on satisfying subsection (a)'s limitation to cases involving plaintiff fault. To the contrary, while both subsection (a) and (b) open with the same broad statement of applicability ("Where an action is brought against one or more persons for injury to person or property . . . ."), only subsection (a) adds the qualifying language, "[w]here . . . the plaintiff is to some degree responsible for the injury or damages claimed." Moreover, subsection (b) expressly states that it applies "after a reduction of damages pursuant to subsection (a) of this Code section, *if any*." OCGA § 51-12-33 (b) (emphasis added). Thus, subsection (b) is plainly meant to apply even if there is no plaintiff fault and, hence, no reduction of damages for plaintiff fault under subsection (a).

Indeed, the former version of the apportionment statute applied only where an action was brought against more than one person for injury to person or property "and the plaintiff is himself to some degree responsible for the injury or damages claimed." Former OCGA § 51-12-33 (effective July 1, 1987). The Tort Reform Act of 2005 included almost identical limiting language in subsection (a) of the current statute but left it out of the newly added subsection (b).

Nor is there anything illogical about this scheme. Damages are apportioned among tortfeasors according to their percentages of fault, regardless of whether the total amount of damages was first reduced under subsection (a) to account for the plaintiff's share of liability. Accordingly, we hold that in applying OCGA § 51-12-33, the trier of fact must "apportion its award of damages among the persons who are liable according to the percentage of fault of each person" even if the plaintiff is not at fault for the injury or damages claimed.

(b) In light of this holding, there was no error in the dismissal of McReynolds's cross-claims for contribution and set-off against GM. As to contribution, OCGA § 51-12-33 (b) flatly states that apportioned damages "shall not be subject to any right of contribution." And the statute reiterates this point by saying that damages "shall not be a joint liability among the persons liable." Id. See *Weller v. Brown*, 266 Ga. 130, 130 (464 SE2d 805) (1996) ("[C]ontribution will not lie in the absence of joint or joint and several liability."). McReynolds also suggests that she was entitled to contribution under OCGA § 51-12-32 (a), but that Code section obviously cannot trump the rules set forth in OCGA § 51-12-33 because it begins with

the phrase, "[e]xcept as provided in Code Section 51-12-33."

Moreover, "[t]he applicability of a set-off is predicated on the settling party being liable, at least in some part, for the plaintiff's injury." *Broda v. Dziwura*, 286 Ga. 507, 509 (689 SE2d 319) (2010). Despite having ample opportunity to develop evidence against GM, McReynolds conceded at the beginning of the trial that she had "no evidence regarding GM's potential liability other than the allegations in Krebs's complaint." *McReynolds v. Krebs*, 307 Ga. App. at 332. See also id. at 334-335 (explaining why there was no competent evidence of GM's fault). The lack of evidence on which apportionment could be based also defeats McReynolds's claim that she was entitled to apportionment under OCGA § 51-12-33 (c) and (d) on the ground that GM was a nonparty which was partially at fault for Krebs's injuries and which entered into a settlement agreement with Krebs.

2. McReynolds contends that the Court of Appeals erred in upholding the trial court's denial of her motion for summary judgment, in which she argued that she and Krebs had entered into an enforceable settlement agreement. See *McReynolds v. Krebs*, 307 Ga. App. at 335-337. " 'To constitute a contract, the offer must be accepted unequivocally and without variance of any sort. . . . A purported acceptance of a plaintiff's settlement offer which imposes conditions . . . will be construed as a counter-offer to the offer to settle for the [insurance] policy limits.' " *Frickey v. Jones*, 280 Ga. 573, 574 (630 SE2d 374) (2006) (citations omitted). " '[T]he circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence.' " Id. at 575 (citation omitted).

On August 24, 2005, Krebs offered to settle her claims against McReynolds for the bodily injury limit available under McReynolds's insurance policy, specifying that the offer would expire on September 6, 2005. On September 1, 2005, McReynolds's insurance carrier faxed this response:

> Our limits are $25,000/$50,000 and we agree to settle this matter for the $25,000 per person limit. Please call me in order to discuss how the lien(s) (Specifically, but not limited to the $273,435.35 lien from Grady Memorial Hospital) will be resolved as part of this settlement.

McReynolds argues that the sentence about liens was merely a request for information and not the introduction of a new condition of settlement. However, McReynolds's insurer did not merely inquire about the existence or amount of the liens against Krebs's causes of

action, which it already knew far exceeded the bodily injury limit on McReynolds's policy. Instead, the insurer wrote that counsel needed to "discuss how the lien(s) . . . will be *resolved as part of this settlement.*" (Emphasis added.) Krebs's offer had made no mention of liens, nor did it contemplate any particular resolution of the hospital lien created by OCGA § 44-14-470 (b) or any other liens as a condition of settlement. As we explained in *Frickey*, while a "mere request for confirmation that no liens exist" will not transform a purported acceptance into a counteroffer, an added condition involving the "*resolution* of . . . actual and potential liens of the health care providers" will. 280 Ga. at 575, 576, n. 2 (emphasis in original). Thus, like the trial court and the Court of Appeals, we construe the response by McReynolds's insurer to Krebs's settlement offer, proposing to resolve the hospital and other liens "as part of this settlement," as a counteroffer rather than an unconditional and unequivocal acceptance. Accordingly, no binding settlement agreement was formed. See id. at 575-576.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., who concurs in Division 2 and in the judgment, and Melton, J., who concurs in part and dissents in part.*

MELTON, Justice, concurring in part and dissenting in part.

I concur in Division 1 of the majority opinion. However, because I believe that McReynolds' insurance carrier fully accepted Krebs' offer to settle her claims rather than making a counteroffer, I respectfully dissent from Division 2. In response to Krebs' offer to settle for the bodily injury limit of McReynolds' policy, McReynolds' insurance carrier responded:

> Our limits are $25,000/$50,000 and *we agree to settle this matter for the $25,000 per person limit.* Please call me in order to discuss how the lien(s) (Specifically, but not limited to the $273,435.35 lien from Grady Memorial Hospital) will be resolved as part of this settlement.

(Emphasis supplied.) McReynolds' insurer stated an unequivocal agreement to pay policy limits. Then, it merely requested a phone call to discuss outstanding liens. Nothing more. Ostensibly, McReynolds' insurance carrier was simply trying to determine to whom Krebs wished the check to be sent.

This is in sharp contrast to *Frickey v. Jones*, 280 Ga. 573 (630 SE2d 374) (2006), a case in which extrinsic evidence proved that an insurer issued a counteroffer to an initial offer to settle a claim. In *Frickey*, State Farm was presented with an offer to settle a claim for

$100,000, and

> State Farm responded by facsimile dated June 25, 2003 (with a copy sent by certified mail), stating its willingness to tender $100,000 as full settlement of all claims, "upon receipt of the fully executed release enclosed. Obviously, payment is complicated by what appears to be a Grady Hospital lien as well as potential liens by your client's health carrier. Please advise me of the status of these liens."

In order to make the determination of whether this response was an acceptance or counteroffer, we had to turn to additional correspondence between the parties. In doing so, we noted that "the circumstances surrounding the making of the contract [of settlement], such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence." Id. at 575. Specifically, in order to find that State Farm had issued a counteroffer, we relied on subsequent correspondence from State Farm which explicitly indicated that " 'State Farm offered to tender the policy limits of $100,000 to [the plaintiff] in *June 2003 if [the plaintiff was] able to resolve the Grady Hospital lien as well as potential liens by [the plaintiff's] health carriers.' "* (Emphasis in original.) Id. We emphasized that we were relying on State Farm's own characterization of its settlement response which clearly indicated that State Farm considered resolution of outstanding liens a condition precedent to a binding settlement. We further emphasized that "[w]e do not suggest, however, that the mere request for confirmation that no liens exist renders an "acceptance a counteroffer which rejects the plaintiff's offer." Id. at 576, n. 2.

*Frickey* is wholly distinguishable from the present matter. Unlike *Frickey*, there is no additional extrinsic evidence which alters the nature of McReynolds' insurance carrier's unequivocal statement that "we agree to settle this matter for the $25,000 per person limit." There is no requirement that other liens be resolved first in the settlement acceptance, and there is no subsequent correspondence which indicates that any such additional condition was required or expected. To the contrary, the letter here gives an unequivocal acceptance and then a simple request for a phone call to discuss outstanding liens. The call is neither a mandatory requirement (the request is prefaced by "please" rather than "you must") nor a condition precedent to payment. As contemplated in *Frickey*, it is merely a request for information, not a counteroffer. Accordingly, there was an offer and acceptance of a settlement in this case, and the resulting contract should be enforced. See, e.g., *Herring v. Dunning*, 213 Ga. App. 695 (446 SE2d 199) (1994).

DECIDED MARCH 23, 2012 —
RECONSIDERATION DENIED APRIL 11, 2012.

*Carlock, Copeland & Stair, Cheryl H. Shaw, David F. Root*, for appellant.

*King & Spalding, Halli D. Cohn, Jennifer A. Simon, Lance A. Cooper*, for appellee.

*Robertson, Bodoh & Nasrallah, Mathew G. Nasrallah*, amicus curiae.