305 Ga. 558
FINAL COPY


S18Q1233.  FEDERAL DEPOSIT INSURANCE CORPORATION v.
LOUDERMILK. et al.


WARREN, Justice.

This case comes to us by way of three certified questions from the United States Court of Appeals for the Eleventh Circuit.  Given the lengthy history of this case, the facts are familiar to the federal courts and to ours.  As the receiver of the Buckhead Community Bank, the Federal Deposit Insurance Corporation (FDIC) sued nine former directors and officers[1] of the Bank in the United States District Court for the Northern District of Georgia, alleging that the former directors and officers were negligent and grossly negligent under Georgia law for their approval of ten commercial real estate loans.  According to the FDIC, those loans led the Bank to sustain nearly $22 million in losses,

---

[1] R. Charles Loudermilk, Sr., Hugh C. Aldredge, David B. Allman, Marvin Cosgray, Louis J. Douglass III, John D. Margeson, and Larry P. Martindale were directors of the Bank.  In addition to their roles as directors, Cosgray and Douglass also served as officers of the Bank, along with Gregory W. Holden and Darryl L. Overall.  Margeson passed away during the pendency of the case; his estate settled the FDIC's claims against him, and his estate is not a party to this appeal.

ultimately resulting in the Georgia Department of Banking and Finance ordering the Bank to be closed and appointing the FDIC as the Bank's receiver. As part of that litigation, the United States District Court for the Northern District of Georgia in 2013 certified to this Court a question asking whether the business judgment rule in Georgia precludes claims brought by the FDIC for ordinary negligence against bank directors and officers. In response to that certified question, we held in *Fed. Deposit Ins. Corp. v. Loudermilk*, 295 Ga. 579 (761 SE2d 332) (2014) ("*Loudermilk I*"), that Georgia's business judgment rule "forecloses claims against officers and directors that sound in ordinary negligence when the alleged negligence concerns only the wisdom of their judgment," but that it "does not absolutely foreclose such claims to the extent that a business decision did not involve 'judgment' because it was made in a way that did not comport with the duty to exercise good faith and ordinary care." Id. at 585-586. As a result, the FDIC, as receiver, was authorized to bring suit against the former directors insofar as its claims were premised on the former directors' and officers' "failure to exercise ordinary care with respect to the way in which business decisions are made." Id. at 593.

Before trial, the former directors and officers requested that the district court instruct the jury to apportion damages among them, in the event that the

jury found any of the former directors and officers liable. The district court denied the requested instruction and the case proceeded to trial. During trial, the former directors and officers again requested — and the district court again denied — a jury instruction on apportionment. At the conclusion of the trial, the jury found that some of the former directors and officers were negligent in approving four of the ten loans at issue and awarded the FDIC $4,986,993 in damages. The district court entered a final judgment in that amount and held the former directors and officers jointly and severally liable. They timely appealed to the United States Court of Appeals for the Eleventh Circuit.

On appeal, the former directors and officers sought a retrial, arguing that the district court erred by failing to instruct the jury on apportionment, which, they say, is required by OCGA § 51-12-33 because purely pecuniary harms — such as the losses at issue here — are included within "injury to person or property" under Georgia's apportionment statute. The FDIC countered that OCGA § 51-12-33 does not apply because the statute is in derogation of common law and the definition of "property" in the apportionment statute must be construed narrowly to refer only to realty or other tangible property. The FDIC further argued that, even if the apportionment statute generally abrogates joint and several liability for most tort claims, Georgia's common-law rule

imposing joint and several liability on tortfeasors who "act in concert" survived enactment of the apportionment statute — meaning that joint and several liability still applies to the concerted actions of tortfeasors, including (it says) to the former directors' and officers' approval of the loans at issue here. The former directors and officers disagreed that the common-law concerted-action rule survived the apportionment statute and argued that the FDIC's case was tried based on the former directors' and officers' individual behavior and decision-making, not on a theory of concerted action.

Concluding that these arguments required answers to questions of law that "have not been squarely answered by the Georgia Supreme Court or the Georgia Court of Appeals," the Eleventh Circuit certified the following questions to our Court:

1. Does Georgia's apportionment statute, OCGA § 51-12-33, apply to tort claims for purely pecuniary losses against bank directors and officers?

2. Did Georgia's apportionment statute, OCGA § 51-12-33, abrogate Georgia's common-law rule imposing joint and several liability on tortfeasors who act in concert?

3. In a negligence action premised upon the negligence of individual board members in their decision-making process, is a decision of a bank's board of directors a "concerted action" such that the board members should be held jointly and severally liable for negligence?

For the reasons that follow, we conclude that OCGA § 51-12-33 does apply to tort claims for purely pecuniary losses against bank directors and officers. We further conclude that OCGA § 51-12-33 did not abrogate Georgia's common-law rule imposing joint and several liability on tortfeasors who act in concert insofar as a claim of concerted action invokes the narrow and traditional common-law doctrine of concerted action based on a legal theory of mutual agency and thus imputed fault. Given our answers to the first two questions and the related guidance we provide below, we decline to further answer the Eleventh Circuit's third question.

*Does Georgia's apportionment statute, OCGA § 51-12-33, apply to tort claims for purely pecuniary losses against bank directors and officers?*

1. To answer the first question before us, we must determine the reach of OCGA § 51-12-33's application — and specifically, whether the scope of Georgia's apportionment statute includes tort claims for purely pecuniary losses, such as the economic losses the FDIC sought to recover in this suit.[2]

---

[2] In its entirety, the apportionment statute provides:

(a) Where an action is brought against one or more persons for injury to person or property and the plaintiff is to some degree responsible for the injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and the judge shall reduce the amount of damages

otherwise awarded to the plaintiff in proportion to his or her percentage of fault.

(b) Where an action is brought against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

(c) In assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit.

(d)(1) Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault.

(2) The notice shall be given by filing a pleading in the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing the nonparty to be at fault.

(e) Nothing in this Code section shall eliminate or diminish any defenses or immunities which currently exist, except as expressly stated in this Code section.

(f) (1) Assessments of percentages of fault of nonparties shall be used only in the determination of the percentage of fault of named parties.

(2) Where fault is assessed against nonparties pursuant to this Code section, findings of fault shall not subject any nonparty to liability in any action or be introduced as evidence of liability in any action.

(g) Notwithstanding the provisions of this Code section or any other provisions of law which might be construed to the contrary, the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed.

OCGA § 51-12-33 (2005).

The subprovision of the apportionment statute most relevant to that inquiry is OCGA § 51-12-33 (b), which governs the circumstances under which an "award of damages" may be apportioned "among the persons who are liable":

> *Where an action is brought against more than one person for injury to person or property*, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

Id. (emphasis supplied).

Because it is undisputed that the FDIC's suit was "brought against more than one person," the critical question is whether this action — a tort claim for negligence and gross negligence seeking damages for purely pecuniary losses against a bank's directors and officers — is brought "for injury to person or property." To answer that question, we first look to the text because "'(a) statute draws its meaning . . . from its text.'" *Zaldivar v. Prickett*, 297 Ga. 589, 591 (774 SE2d 688) (2015) (quoting *Chan v. Ellis*, 296 Ga. 838, 839 (770 SE2d 851) (2015)). And because we "'presume that the General Assembly meant what it said and said what it meant'" when it comes to the meaning of statutes,

id. (quoting *Deal v. Coleman*, 294 Ga. 170, 172 (751 SE2d 337) (2013)), "'we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.'" *Loudermilk I*, 295 Ga. at 588 (quoting *Deal*, 294 Ga. at 172-173). Important are "'[t]he common and customary usages of the words,'" which, in cases like this one, include "the usual and customary meaning of . . . term[s] as used in a legal context." *Zaldivar*, 297 Ga. at 591, 596 (quoting *Chan*, 296 Ga. at 839). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." Id. at 591 (citation and punctuation omitted).

Here, we construe the meaning of "property" as it is used in OCGA § 51-12-33 (b), in the particular context of subsection (b)'s reference to actions brought "for injury to person or property," and in the context of the apportionment statute as a whole. In evaluating the meaning of "property," we note that neither Title 51 (Torts) nor the apportionment statute (OCGA § 51-12-33) defines the term. But the Georgia Code provides a general definition: "[a]s used in this Code or in any other law of this state," "'[p]roperty' includes

real and personal property." OCGA § 1-3-3 (16).[3] This codified definition, as well as the absence of a separately enacted definition of "property" in the apportionment statute, supports a broad reading of "injury to person or property" in OCGA § 51-12-33 (b) that includes tort actions brought for injury to both real and personal property. Common dictionary definitions reveal varying definitions of "property." See, e.g., Merriam-Webster Dictionary ("something owned or possessed, *specifically*: a piece of real estate") (2019 online edition); New Oxford American Dictionary (3d ed. 2010) ("a thing or things belonging to someone; possessions collectively"); Webster's II New College Dictionary (2001) ("Something tangible or intangible to which its owner holds legal title."); The American Heritage Dictionary (2d coll. ed. 1991) (same). More persuasive, however, is "the usual and customary meaning" of the term "property" "as used in a legal context." *Zaldivar*, 297 Ga. at 596. To that end, the Black's Law Dictionary definitions of "property" — both as it is used more generally, and as it is used with respect to "personal

---

[3] See OCGA § 1-3-2 (legislatively defined words "shall have the meanings specified, unless the context in which the word or term is used clearly requires that a different meaning be used"); see also *Williams Gen. Corp. v. Stone*, 280 Ga. 631, 632 (632 SE2d 376) (2006) (relying on OCGA § 1-3-3 (14)'s definition of "person" in conjunction with the mandates of OCGA § 1-3-2).

property" — contemplate or expressly include "intangible" property, which is defined as "[p]roperty that lacks a physical existence." See Black's Law Dictionary (8th ed. 2004) (noting that "property" is also termed "bundle of rights," and defining "personal property" as "[a]ny movable *or intangible* thing that is subject to ownership and not classified as real property" (emphasis supplied)). See also Black's Law Dictionary (10th ed. 2014) (expressly defining "property" as "[c]ollectively, the rights in a valued resource such as land, chattel, *or an intangible*" (emphasis supplied)); *Zaldivar*, 297 Ga. at 596 (citing Black's Law Dictionary in determining the customary meaning of the term "fault" as used in the apportionment statute).

The FDIC argues for a narrower definition, insisting that "injury to person or property" extends only to *tangible* property.[4] In support, the FDIC cites Blackstone to show that at English common law, tort actions were those

---

[4] The FDIC also argues that the apportionment statute must be strictly construed because it is in derogation of the common law. See *Delta Airlines v. Townsend*, 279 Ga. 511, 512 (614 SE2d 745) (2005). But cf. *May v. State*, 295 Ga. 388, 397 (761 SE2d 38) (2014) (framing the same rule in the broader context of statutory construction) ("The General Assembly properly can, of course, enact legislation that departs from the common law, but to the extent that statutory text can be as reasonably understood to conform to the common law as to depart from it, the courts usually presume that the legislature meant to adhere to the common law.") (citation omitted); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 318 (2012) ("The better view is that statutes will not be interpreted as changing the common law unless they effect the change with clarity.").

for "injury done to . . . person or property"; that "property" pertained to real or personal property; and that personal property "consists in goods, money, and all other moveable chattels, and things thereunto incident; a property which may attend a man's person wherever he goes, and from thence receives its denomination." See 3 William Blackstone, Commentaries on the Laws of England (1st ed. 1768), 117, 144.[5] These definitions, the FDIC says, demonstrate conclusively that "property" — at least as contemplated in the context of common-law torts for "injury to person or property" — extended only to tangible property.

It is this fixed, common-law definition of property, the FDIC argues, that the Court of Appeals of Georgia must have implicitly relied on in 1964 when it asserted (without citing any legal authority) that "'[p]roperty' at common law was limited to tangible realty or personalty." *City of Atlanta v. J. J. Black & Co.*, 110 Ga. App. 667, 670 (139 SE2d 515) (1964). Indeed, that single statement from *J. J. Black* — a statement that was repeated in only four Court of Appeals cases over the next five decades — is the linchpin of the FDIC's

---

[5] The FDIC further contends that "property" refers only to tangible property because certain common-law torts such as trespass required an injury to tangible property. To support this, the FDIC cites 24 Edward W. Tuttle, Standard Encyclopaedia of Procedure, "Trespass," p. 922 (1920) ("The action of trespass will not lie if . . . the matter affected is intangible, or the right affected is incorporeal.").

argument that "the existing jurisprudence at the time the Apportionment Statute was enacted held that 'injury to person or property' referred only to tangible property."  See id.; see also *City of Atlanta v. Benator*, 310 Ga. App. 597, 601-602 (714 SE2d 109) (2011); *Neely v. City of Riverdale*, 298 Ga. App. 884, 885-886 (681 SE2d 677) (2009); *Sims v. City of Alpharetta*, 207 Ga. App. 411, 411 (428 SE2d 94) (1993); *Holbrook v. City of Atlanta*, 139 Ga. App. 510, 511 (229 SE2d 21) (1976).  And because that fixed, common-law meaning of "property" existed and was well known at the time the apportionment statute was enacted in 2005, the argument goes, the term "injury to person or property" incorporates that fixed, common-law meaning and limits apportionment to tort actions brought for injury to tangible property.

We disagree.  The proposition set forth in *J. J. Black* does not support the absolute principle that the term property always includes only *tangible* property; instead, *J. J. Black* merely held that claims sounding in contract did not implicate a statutory municipal ante litem notice requirement because the ante litem statute applied only to tort damages for "injury to person or property."  See *J. J. Black*, 110 Ga. App. at 670 ("'Property' at common law was limited to tangible realty or personalty, and *therefore cannot be extended to include property rights in contracts*." (emphasis supplied)).  The *J.J. Black*

court had no occasion to examine whether there was a customary, common-law usage of the phrase "injury to person or property" in the context we examine it here, since the primary question presented there — and also presented in the cases that followed it — was whether certain claims sounded in tort (in which case the ante litem statute would apply) or in contract (in which case it would not). Id. ("[For] claims arising out of contracts, *as contrasted with torts*, the city, being a party to the contract, is already on notice as to the existence and the circumstances of the contract which is the basis of the claim; therefore the reason for such notice does not exist." (emphasis supplied)). See also, e.g., *Sims*, 207 Ga. App. at 411;[6] *Holbrook*, 139 Ga. App. at 511 (citing *J. J. Black* and reversing dismissal of counterclaim in contract case because ante litem notice was not required for contract claims); *Neely*, 298 Ga. App. at 885-886 (relying on *Holbrook* and *J. J. Black* in holding that "the ante litem notice requirement of OCGA § 36-33-5 is not applicable to suits

---

[6] In *Sims*, the Court of Appeals affirmed the dismissal of the plaintiffs' counterclaims for failure to comply with the municipal ante litem statute when those claims did not "arise out of contract" but instead were "tortious in nature." 207 Ga. App. at 411. Notably, the tort claims that triggered the ante litem statute's "injury to person or property" were claims of interference with a business — i.e., claims for injury to *intangible* property. See id. This application of *J. J. Black* undercuts the FDIC's argument that "injury to person or property" categorically excludes injury to intangible property.

for breach of contract" and reversing grant of summary judgment to city based on plaintiff's failure to provide ante litem notice); *Benator*, 310 Ga. App. at 601 (quoting *Neely*'s holding that "the ante litem notice requirement of OCGA § 36-33-5 is not applicable to suits for breach of contract" and affirming denial of city's motion to dismiss for failure to provide ante litem notice).[7]

Moreover, it does not appear that English common law treated the definition of "property" so definitively. The former directors and officers point to the very same passages from Blackstone the FDIC cites to argue the contrary position: that "property" cannot be interpreted narrowly, in light of Blackstone's acknowledgment that personal property includes "money" and extends beyond just chattels to "things thereunto incident." 3 William Blackstone, Commentaries on the Laws of England (1st ed. 1768), 117, 144. Indeed, our Court of Appeals recognized a more expansive common-law definition of "injury to personalty" in *Davis v. Atlanta Gas Light Co.*, 82 Ga. App. 460 (61 SE2d 510) (1950), when it concluded in a tort case — and after a thorough review of the common law that the court in *J. J. Black* did not undertake — that "so far as injuries to *personalty* are concerned, the statute

---

[7] To the extent that *Benator* held that this narrow construction of "injury to person or property" in the ante litem context separately applied to OCGA § 51-12-33 (b), 310 Ga. App. at 607, that holding is hereby disapproved for the reasons stated in this opinion.

allowing to the executor of the injured party a right of action surviving the death of the owner has been construed *both by the British courts prior to 1776 and by our Federal courts* to refer to injury to personalty, *tangible or intangible*." Id. at 464 (emphasis supplied). Professors Prosser and Keeton likewise acknowledged that the definition of property could extend to "intangible" property in the context of torts when they noted with respect to the tort of conversion: "Intangible rights of all kinds could not be lost or found, and the original rule was that there could be no conversion of such property. But this hoary limitation has been discarded to some extent by all of the courts." W. Page Keeton, Prosser and Keeton on the Law of Torts § 15, at 91 (5th ed. 1984) ("Prosser & Keeton").

Whatever the exact parameters of the common-law definition of "property" were or are in the context of tort actions for "injury to person or property," it thus appears that the definition does not categorically *exclude* property that could be characterized as "intangible." As a result, we reject the FDIC's contention that "injury to person or property" retained a fixed, common-law meaning at all, let alone a meaning that excludes intangible property as a potential source of tort injury that may be subject to apportionment under OCGA § 51-12-33 (b). We instead adopt the usual and

customary meaning of the term "property," as used in a legal context, and conclude that "injury to person or property" in OCGA § 51-12-33 (b) includes both tortious injuries to tangible and intangible property.

Importantly, this broad definition of "property" comports with longstanding Georgia precedents that have, in various contexts, determined that injuries to "property" are not restricted to tangible property. In *Crawford v. Crawford*, 134 Ga. 114 (67 SE 673) (1910), for example, we considered whether plaintiff's fraud claims for purely pecuniary losses — the balance of a debt owed — were precluded by a statute of limitation for actions "for injuries done to the person" or a statute of limitation for cases claiming "injuries to personal property," and held that the damages sought "resulted from an injury to the personal property of the plaintiff, and not from an injury to his person." 134 Ga. at 120, 123 (punctuation omitted). In so holding, we accepted that a tort action for purely pecuniary loss was an injury that was captured within the phrase "injuries to personal property" in the relevant statute of limitation. Id. See also *Rigdon v. Barfield*, 194 Ga. 77, 83-84 (20 SE2d 587) (1942) (relying on *Crawford* and holding that fraud claim alleged an injury to property); *Lamb v. Howard*, 145 Ga. 847 (90 SE 63) (1916) (relying on *Crawford* and holding that statute applying to anyone "whose person or

property has been injured" was "broad enough to comprehend a wrongful conversion of property" (punctuation omitted)).

Similarly, in *Frost v. Arnaud*, 144 Ga. 26 (85 SE 1028) (1915), we held that the plaintiffs' action seeking damages for pecuniary losses due to fraudulent misrepresentations and concealment "to purchase worthless shares of stock in a corporation which was never legally organized" was governed by the statute of limitation for "[a]ll actions for injuries to property, real or personal." Id. at 29. Implicit in that determination was the notion that "injuries to property" included tort claims for purely pecuniary loss. See also *Small v. Wilson*, 20 Ga. App. 674, 677 (93 SE 518) (1917) (tort action in trover could be maintained for shares of stock because "[s]hares in a corporation are generally said to be incorporeal personal property").

And in *Bowers v. Fulton County*, 221 Ga. 731 (146 SE2d 884) (1966), we held that our Constitution's eminent domain provision — that "Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation" — "plain[ly] and explicit[ly]" extended to economic damages to a business because "the right of the owner to recover for damage done his property was inclusive of damages to every species of property, real and personal, corporeal and incorporeal." Id. at 734, 736, 737 (punctuation

omitted).  There, we disapproved prior cases that "were predicated upon the concept that the constitutional provision in referring to property meant only physical or corporeal property," a view that we called "too narrow."  Id. at 737. See also *Wayne v. Hartridge*, 147 Ga. 127, 132 (92 SE 937) (1917) ("The term 'property' is a very comprehensive one, and is used not only to signify things real and personal owned, but to designate the right of ownership, and that which is subject to be owned and enjoyed.").

The definition we adopt today is also consistent with the handful of Court of Appeals cases since 2005 that have applied the apportionment statute in cases involving economic and business torts, though none of those cases faced the question of statutory interpretation we have confronted today.  See *I.A. Group, Ltd. v. RMNANDCO, Inc.*, 336 Ga. App. 461, 462-464 (784 SE2d 823) (2016) (holding that trial court committed plain error in instructing the jury on joint and several liability because the plain language of OCGA § 51-12-33 required apportionment of damages in a suit for breach of fiduciary duty and related business torts seeking damages for purely pecuniary losses); *Alston & Bird LLP v. Hatcher Mgmt. Holdings, LLC*, 336 Ga. App. 527, 530 (785 SE2d 541) (2016) (trial court was required to allow apportionment of fault in an action asserting legal malpractice and breach of fiduciary duty that caused

financial losses);  *Levine v. SunTrust Robinson Humphrey*, 321 Ga. App. 268, 269, 272 (740 SE2d 672) (2013) (noting that "the matter of apportioning the fault of [the multiple tortfeasors in the case], if any, is a matter for the jury[,]" in a case where a company's bankruptcy trustee sued a corporate officer and multiple board members, alleging that they "negligently or intentionally caused the destruction of [a] business by violating fiduciary duties, breach[ed] contracts, and negligently or intentionally misrepresent[ed] information about certain business transactions, which transactions led to the insolvency of the company").[8]

And it makes good sense that OCGA § 51-12-33 (b) — a statute enacted in derogation of a common-law system of awarding damages for torts, see

---

[8] Other states with similar statutes are in agreement.  See, e.g., *ESCA Corp. v. KPMG Peat Marwick*, 959 P2d 651, 656 (Wash. 1998) (comparative negligence statute's phrase "harm to property" "applies when purely economic loss has resulted"); *Standard Chartered PLC v. Price Waterhouse*, 945 P2d 317, 353-354 (Ariz. Ct. App. 1996) (apportionment statute's language, "action for personal injury, property damage or wrongful death," applied to "economic claims"); *Darnell Photographs, Inc. v. Great American Ins.*, 519 P2d 1225, 1226 (Colo. App. 1974) ("[W]e hold that the phrase 'injury to property' in the comparative negligence statute is not necessarily limited to a physical injury to tangible property, but rather includes any damage resulting from invasion of one's property rights by actionable negligence.").  But see, e.g., *Williams Ford, Inc. v. Hartford Courant Co.*, 657 A2d 212, 223 (Conn. 1995) (concluding that "damage to property" as used in comparative negligence statute "does not include purely commercial losses"); *Wescoat v. Northwest Sav. Assn.*, 548 A2d 619, 622 (Pa. Super. Ct. 1988) (comparative negligence statute did not apply because "[t]he legislature in referring to 'injury to person or property' referred to property in the sense of tangible property").

*Couch v. Red Roof Inns*, 291 Ga. 359, 364-365 (729 SE2d 378) (2012) (General Assembly intended to "displace" and "supplant" the common law) — would create a "comprehensive process" for apportionment of damages in tort cases that extends not just to a narrow category of tangible property but to intangible property as well. See *Zaldivar*, 297 Ga. at 592. Just as we construed "'fault,' as used without limitation in OCGA § 51-12-33," to "include[ ] all wrongdoing" in *Couch*, 291 Ga. at 365, we likewise construe "property," as used without limitation in the phrase "injury to person or property," to include injuries to tangible and intangible property alike.

We therefore answer the first certified question in the affirmative: Georgia's apportionment statute, OCGA § 51-12-33, applies to tort claims for purely pecuniary losses against bank directors and officers. As a result, the type of damages the FDIC seeks here are not, as a threshold matter of law, excluded from apportionment under OCGA § 51-12-33 (b).

*Did Georgia's apportionment statute, OCGA § 51-12-33, abrogate Georgia's common-law rule imposing joint and several liability on tortfeasors who act in concert?*

2. Our answer to the first certified question does not necessarily answer whether damages in this case can be apportioned, because our textual interpretation of "injury to person or property" does not decide whether certain

common-law rules for imposition of joint and several liability survive enactment of OCGA § 51-12-33 (b).  We therefore move to the second question before us: whether OCGA § 51-12-33 abrogates Georgia's common-law rule imposing joint and several liability on tortfeasors who act in concert.  As explained below, the answer is no, with an important caveat: concerted action survives the apportionment statute, but only insofar as it was traditionally understood at common law within the context of torts.

We begin by considering the common-law origins of the doctrine. Concerted action appears to be rooted in criminal trespass, where a legal theory of vicarious liability imputed the unlawful acts of one member of a "joint enterprise" to another.  Prosser & Keeton § 46, at 323 ("[T]he act of one is the act of all of the same party being present." (citation and punctuation omitted)). Under that theory, because "[a]ll might be joined as defendants in the same action at law, and since each was liable for all, the jury would not be permitted to apportion the damages."[9]  Id. at 323.  The principles of concerted action later "extended beyond its original scope" to torts, so that all people who, "in pursuit of a common plan or design to commit a tortious act, actively take part in it, or

_____

[9] Notably, rules of joinder at common law "were extremely strict," and the joinder of two or more defendants in a lawsuit was "limited to cases of concerted action, where a mutual agency might be found."  Prosser & Keeton § 46, at 324-325.

further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's acts done for their benefit, are equally liable." Id. "Express agreement is not necessary" to establish concerted action; "all that is required is that there be a tacit understanding." Id. But it is "essential that each particular defendant who is to be charged with responsibility shall be proceeding tortiously, which is to say with the intent requisite to committing a tort, or with negligence." Id. at 324. "Such concerted wrongdoers were considered 'joint tort feasors' by the early common law." Prosser & Keeton § 52, at 346.

Concerted action for torts was thus born out of a legal theory of mutual agency in which the acts (and ultimately the liability) of one wrongdoer were imputed as a matter of law to another who was part of the same "joint enterprise." Prosser & Keeton § 52, at 346. ("In legal contemplation, there is a joint enterprise, and a mutual agency, so that the act of one is the act of all, and liability for all that is done is visited upon each."). See also Restatement (Second) of Torts § 876, cmt. (a) ("Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result." The early common-law theory "was that

there was a mutual agency of each to act for the others, which made all liable for the tortious acts of any one.").

Georgia historically has recognized this principle: "[i]t has always been true that where concert of action appears, a joint tortfeasor relation is presented and all joint tortfeasors are jointly and severally liable for the full amount of plaintiff's damage." *Gilson v. Mitchell*, 131 Ga. App. 321, 324 (205 SE2d 421) (1974), aff'd, 233 Ga. 453, 454 (211 SE2d 744) (1975) ("We conclude that the opinion of the Court of Appeals correctly states the law of Georgia on this subject and we adopt [its] opinion."). Cf. *City of Atlanta v. Cherry*, 84 Ga. App. 728, 731-733 (67 SE2d 317) (1951) (rejecting joint tortfeasor status although plaintiff alleged that defendants acted in concert because plaintiff failed to allege adequately that there was "concerted action in operating [an airport runway] in such a way as to injure plaintiff").

Practically speaking, the invocation of concerted action at common law paved for plaintiffs a direct path to joint and several liability for an entire group of wrongdoers. *Gilson*, 131 Ga. App. at 325 ("If there was concert of action, then there is no need to go further to establish entire liability." (citation and punctuation omitted)). But through *Gilson*, Georgia's appellate courts confirmed that joint and several liability was available more broadly for harms

caused by multiple tortfeasors and extended beyond just cases of traditional concerted action. Indeed, *Gilson* announced a new hybrid rule that — "even though voluntary, intentional concert is lacking" — "if the separate and independent acts of negligence of several persons combine naturally and directly to produce a single indivisible injury, and a rational basis does not exist for an apportionment of damages, the actors are joint tortfeasors." 131 Ga. App. at 330-331. *Gilson* made clear that joint tortfeasor status, and thus joint and several liability, was available *either* by showing concerted action *or* by showing "indivisible injury." In other words, concerted action was no longer the "sine qua non of a joint tort." Id. at 329.[10]

*Gilson* was, of course, decided 30 years before the current version of the apportionment statute was enacted. The FDIC nonetheless seizes on *Gilson* to argue that damages must be awarded here under joint and several liability because (1) the former directors and officers engaged in concerted action, and

_____

[10] In a case decided after *Gilson* but before the apportionment statute was enacted, we laid out five "likely factual circumstances" involving joint tortfeasors and concluded that only two met the "requirement" of concerted action at "early common law." *Posey v. Med. Center-West, Inc.*, 257 Ga. 55, 57 (354 SE2d 417) (1987). In so doing, we identified the following two scenarios as embodying traditional concerted action: (1) where "tortfeasors A and B act in concert to produce a single indivisible injury" and (2) where "A and B act in concert to injure C but A produces injury Y and B produces injury Z which injuries are separate and distinct." Id. As part of that explanation, we rejected as concerted action a scenario where, for example, "A's independent act combines with B's independent act to produce a single individual injury." Id.

concerted action (and the joint and several liability that attaches to it) survived enactment of the apportionment statute; and (2) the former directors and officers caused a "single, indivisible injury." As to its first argument, the FDIC asserts that "liability for concerted action is vicarious" and argues (among other things) that concerted action survives the apportionment statute because "liability among tortfeasors who act in concert cannot rationally be apportioned." It also points to *PN Express*, *Inc. v. Zegel*, 304 Ga. App. 672, 680 (697 SE2d 226) (2010), in which the Court of Appeals held that apportionment was not required for tortfeasors whose liability was based on a theory of derivative liability (such as respondeat superior), to argue that such "reasoning should be extended to include concerted action" because "there is a common liability and no rational basis exists to apportion damages."[11] As to its second argument, the FDIC contends that each "approval and making of [an] imprudent loan" constituted a "single, indivisible injury" and that the jury

---

[11] The FDIC also points to a Comment to the Restatement (Third) of Torts, which notes that "in jurisdictions that have modified or abolished joint and several liability, the rule . . . imposes joint and several liability on all persons engaging in concerted action and, to that extent, supersedes the abolition or modification of joint and several liability." Restatement (Third) of Torts, § 15, cmt. a.

considered "multiple individual injuries" (i.e., multiple specific loans) on the verdict form.

As to this latter argument, we disagree: in *Couch*, we rejected as "unfounded" the plaintiff's argument that her "single, indivisible" injury could not be apportioned and held that "[w]hile the injury may be singular, the damages flowing from that injury may be apportioned by statute among the tortfeasors responsible for causing it." 291 Ga. at 366. Given our holding in *Couch*, the FDIC's argument — that damages can be awarded jointly and severally if indivisible injury is proven — fails. Moreover, it underscores the shift, necessitated by the apportionment statute itself, away from the *Gilson* paradigm of a damages analysis based on *injury* — where courts asked whether, even *absent* "voluntary, intentional concert," joint and several liability applied where "the separate and independent acts of negligence of several persons combine naturally and directly to produce a single indivisible injury." *Gilson*, 131 Ga. App. at 330-331.

Indeed, OCGA § 51-12-33 (b) reveals a different analytical touchstone for damages analysis: whether *fault* is divisible.[12] By ordering that "the trier

---

[12] The former directors and officers therefore miss the mark when they argue that the plain text of the apportionment statute precludes joint and several liability for

of fact . . . shall" apportion damages "among the persons who are liable *according to the percentage of fault of each person*," OCGA § 51-12-33 (b) (emphasis supplied), the statute necessarily presumes that fault must be divisible among "persons" for apportionment to apply in the first place. See *McReynolds v. Krebs*, 290 Ga. 850, 852 (725 SE2d 584) (2012) ("Damages are apportioned among tortfeasors according to their *percentages of fault*, regardless of whether the total amount of damages was first reduced under subsection (a) to account for the plaintiff's share of liability." (emphasis supplied)).

Under OCGA § 51-12-33, the pertinent inquiry is therefore whether fault is capable of division. When fault is divisible and the other requirements of OCGA § 51-12-33 (b) are met, then the trier of fact "shall" apportion. If fault is indivisible, then the trier of fact cannot carry out the statute's directive of awarding damages "according to the percentage of fault of each person" and

---

tortfeasors who act in concert because it "does not except from its application actions involving joint tortfeasors or actions for particular types of conduct." Strictly speaking, they are correct; there is no textual reference to "concerted action" or "acting in concert" in OCGA § 51-12-33 (b). But that argument ignores what *is* contained in the text of the apportionment statute: an instruction to apportion "among the persons who are liable according to the percentage of fault of each person." See id.

the apportionment statute does not govern how damages are awarded. See OCGA § 51-12-33 (b).

In light of this statutory command, we must determine whether fault is divisible when an action under OCGA § 51-12-33 (b) is brought against more than one person when those persons have acted in concert. Given the common-law focus of concerted action as a legal theory of mutual agency in tort, and in light of the apportionment statute's directive to apportion "according to the percentage of fault of each person," we cannot say that OCGA § 51-12-33 abrogates concerted action in its traditional form. That is because true concerted action is predicated on the idea that wrongdoers "in pursuance of a common plan or design to commit a tortious act . . . are equally liable," and that through "joint enterprise" and "mutual agency . . . the act of one is the act of all." Prosser & Keeton § 46, at 323; id. § 52, at 346. Under that legal theory, where the act (and thus the fault) of one person is imputed to all other members of the same joint enterprise, "liability for all that is done is visited upon each." Id. § 52, at 346.[13] And where the fault of one person is legally imputed to

---

[13] We have previously observed that for purposes of the apportionment statute, "fault" and "liability" are not identical, but that they are "closely connected" and that subsection (b) "specifies that the 'fault' of such a defendant" who is liable for the injury to

another person who is part of the same joint enterprise, we cannot say that there is a legal means of dividing fault "among the persons who are liable." See OCGA § 51-12-33 (b).[14] Under these circumstances, we hold that concerted action does survive the apportionment statute and damages (if any) will be awarded jointly and severally.

Our reasoning is consonant with what is commonly called "civil conspiracy" under Georgia law, which appears to be the same or almost identical to common-law concerted action.[15] For example, in *Nottingham v. Wrigley*, a case brought under former Ga. Code § 105-1207[16] for tortious

---

the plaintiff "relative to the 'fault' of all — is the measure and limit of her liability." *Zaldivar*, 297 Ga. at 595, 596 & n.5.

[14] See *Woods v. Cole*, 693 NE2d 333, 337 (Ill. 1998) ("[I]t is legally impossible to apportion liability among tortfeasors who act in concert."). But see *Reilly v. Anderson*, 727 NW2d 102, 110-111 (Iowa 2006) (disagreeing that apportionment of fault among concerted actors is factually or legally impossible, but "creat[ing] a judicial exception" to nonetheless hold that Iowa's comparative-fault statute did not "override the common law rule" applying joint and several liability to "concerted action").

[15] In some cases, terms like "acting in concert" appear to be used interchangeably with "conspiracy," although other Georgia cases reference both terms or use one or the other. Nevertheless, the legal concepts of concerted action and conspiracy appear to be defined in much the same way.

[16] The current version of the statute is materially identical: "In all cases, a person who maliciously procures an injury to be done to another, whether an actionable wrong or a breach of contract, is a joint wrongdoer and may be subject to an action either alone or jointly with the person who actually committed the injury." Notably, OCGA § 51-12-33 did not expressly repeal OCGA § 51-12-30.

interference with contract that also involved a conspiracy claim, this Court recognized the "well established" rule of civil conspiracy that "the act of one is the act of all." 221 Ga. 386, 388 (144 SE2d 749) (1965). Notably, our discussion of civil conspiracy closely resembled the common-law requirements of concerted action: "[t]he essential element . . . is the common design" and "mutual understanding," either "positively or tacitly[,] . . . that [the conspirators] will accomplish the unlawful design." Id. Under such circumstances, conspirators were "jointly and severally liable for all the acts of each, done in pursuance of the conspiracy." Id. (citations and punctuation omitted). More recently, in *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Community Trust*, we explained that the "essential element of a civil conspiracy is a common design" and reiterated that "the fact of conspiracy, if proved, makes actionable any deed by one of the conspirators chargeable to all." 298 Ga. 221, 225 (780 SE2d 311) (2015) (citations and punctuation omitted).[17] There, we noted that if a "jury determine[d] that a conspiracy existed, then" one of the defendants "could be held jointly liable for any torts

---

[17] We further explained that "'the conspiracy itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.'" *Metro Atlanta Task Force*, 298 Ga. at 225 (citation omitted).

committed by the other defendants to effect the common design of the conspiracy, even if he did not directly engage in each and every tort alleged." Id. at 226.[18] See also, e.g., *Woodruff v. Hughes*, 2 Ga. App. 361, 364 (58 SE 551) (1907) (noting that "all parties to a conspiracy are jointly and severally liable for damages occasioned by the unlawful combination and acts done by any one of the conspirators in furtherance of a common object become the acts of all" and affirming denial of general demurrer where petition adequately alleged conspiracy); *Savannah College of Art & Design v. School of Visual Arts of Savannah*, 219 Ga. App. 296, 297 (464 SE2d 895) (1995) (in case brought under OCGA § 51-12-30, explaining that entry into a conspiracy even "after its inception would equally bind [a defendant] as to any wrongful act done by any one of the conspirators in pursuance of the general design") (quoting *Peoples Loan Co. v. Allen*, 199 Ga. 537, 559 (34 SE2d 811) (1945)). Cf. *Cherry*, 84 Ga. App. at 733 ("Since the petition does not allege a concert

---

[18] We also noted that it "is usually within the province of the jury to draw . . . inferences" about whether a conspiracy exists based on "the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances." 298 Ga. at 225-226 (citations and punctuation omitted). And in *Nottingham*, we concluded that evidence of one defendant's tortious conduct, "individually or in concert with" another defendant, "required submission to the jury." 221 Ga. at 389. In this case, it does not appear that the jury was permitted to decide whether the former directors and officers acted in concert or not.

of action in operating on the runway so as to injure the plaintiff and does not allege a conspiracy to so operate it, and does not allege any fact which would make each defendant liable for the acts of the others, the action against the defendants jointly will not lie.").

The similarities between civil conspiracy, a legal theory predicated on a "common design" which we have recognized as imputing the acts of one co-conspirator to another, and concerted action, a legal theory predicated on "joint enterprise" where the acts of one are imputed to another, support the conclusion that the fault resulting from concerted action (in its traditional, common-law form) is not divisible as a matter of law and, therefore, cannot be apportioned.

We are further persuaded of this view because it gives full effect to the statutes that surround the apportionment statute, and — in construing a statute — we seek to "avoid a construction that makes some language mere surplusage." *Ga. Dept. of Nat. Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 603 (755 SE2d 184) (2014) (citation and punctuation omitted). Most notably, it ensures the continuing validity of the contribution statute, which explicitly says that it applies "[e]xcept as provided in Code Section 51-12-33" — thereby suggesting that passage of the apportionment statute did not

render the contribution statute a nullity.[19]  See OCGA § 51-12-32.  See also

*Zurich American Ins. Co. v. Heard*, 321 Ga. App. 325, 330 (740 SE2d 429)

(2013) ("Based upon the plain language of [the contribution] statute, the right

of contribution between joint tortfeasors has not been completely abolished by

the legislature's enactment of OCGA § 51-12-33 (b).").  The apportionment

statute, in turn, provides that when damages are apportioned under OCGA §

51-12-33 (b), those damages "shall not be subject to any right of contribution."

OCGA § 51-12-33 (b).  The divisible-fault requirement reconciles these two

statutes, which sit side-by-side in the Georgia Code: the apportionment statute

applies when an action is brought against more than one person and fault is

divisible.  See OCGA § 51-12-33 (b).  When fault is indivisible — including

in instances of concerted action — damages are awarded under joint and

several liability.  And where joint and several liability applies, contribution

may also.  See *McReynolds*, 290 Ga. at 852 ("'[C]ontribution will not lie in the

---

[19] Generally speaking, under OCGA § 51-12-32 (b), "a defendant is entitled to contribution from his co-defendants when . . . the judgment has been entered against both and . . . it has actually been paid by one in an amount exceeding his pro rata share." *Virginia Ins. Reciprocal v. Pilzer*, 278 Ga. 190, 191 (599 SE2d 182) (2004).  "The cases permitting contribution have allowed it to be enforced on a pro-rata basis predicated upon the number of joint tort-feasors in the case, rather than on a basis of relative fault." *Union Camp Corp. v. Helmy*, 258 Ga. 263, 265 n.1 (367 SE2d 796) (1988); see also *St. Paul Fire & Marine Ins. Co. v. MAG Mut. Ins. Co.*, 209 Ga. App. 184, 185 (433 SE2d 112) (1993) ("[O]rdinarily the total amount of the judgment is divided equally among those liable to the injured person.").

absence of joint or joint and several liability.'" (quoting *Weller v. Brown*, 266 Ga. 130, 130 (464 SE2d 805) (1996)); *Phillips v. Tellis*, 181 Ga. App. 449, 449 (352 SE2d 630) (1987) ("[T]he right to contribution relates only to joint tortfeasors. . . . It has always been true that where concert of action appears, a joint tortfeasor relation is presented and all joint tortfeasors are jointly and severally liable for the full amount of plaintiff's damage." (citations and punctuation omitted)).[20] In sum, joint and several liability still exists alongside apportionment and plays an important role in the space reserved for it in those cases where fault is indivisible.

We therefore answer the second certified question in the negative: Georgia's apportionment statute, OCGA § 51-12-33, did not abrogate Georgia's common-law rule imposing joint and several liability on persons who act in concert. We emphasize, however, that this holding encompasses only traditional concerted action, as it was understood at common law, for the basic reason that fault in such scenarios is not divisible. We reach this

---

[20] Apart from concerted action, there may exist other legal theories that preclude division of fault as a matter of law — perhaps, for instance, vicarious liability or other agency-based or derivative theories of liability. And there may also be factual circumstances that impede a division of fault between persons, though we are considerably more skeptical that will be so. We provide these examples to illustrate areas where joint and several liability conceivably could apply, but emphasize that we do not decide today whether — or how — joint and several liability might apply in those or other cases.

conclusion after employing the touchstone inquiry set forth by the apportionment statute — whether fault is divisible — and direct courts to use the same inquiry when evaluating whether the apportionment statute applies in future cases.

*In a negligence action premised upon the negligence of individual board members in their decision-making process, is a decision of a bank's board of directors a "concerted action" such that the board members should be held jointly and severally liable for negligence?*

3. Whether a plaintiff adequately has pleaded and established the existence of a concerted action such that defendants should be held jointly and severally liable depends on the legal theories and facts presented in each particular case. See, e.g., *Phillips*, 181 Ga. App. at 450-451. We do not engage in, and do not take a position on, the record-intensive evaluation of whether the FDIC alleged, offered evidence of, and proved (and whether the jury was properly instructed on) the type of concerted action that fits the legal paradigm we have explained today, and for which fault is truly indivisible as a matter of law. Therefore, we respectfully decline to provide a further response to the Eleventh Circuit's third question.

Certified questions answered. All the Justices concur.

Decided March 13, 2019.

Certified question from the United States Court of Appeals for the Eleventh Circuit.

Krevolin Horst, Joyce G. Lewis; Mozley Finlayson & Loggins, Curtis J. Martin II; Miller & Martin, Michael P. Kohler, Charles B. Lee, Laura E. Ashby; George P. Shingler; Buckley Beal, Ashley W. Clark; Kathryn R. Norcross, James S. Watson, Colleen J. Boles, John S. Tonkinson; Stokes, Williams, Sharp & Davies, Ellis A. Sharp, for appellant.

Alston & Bird, Robert R. Long IV, Brian D. Boone, Theodore J. Sawicki, Elizabeth G. Clark, Lauren T. Macon, for appellees.