McFadden, Presiding Judge, dissenting.
Because I cannot agree with the majority's construction of the statute before us, I respectfully dissent from Division 1 of the majority opinion. I would not reach Division 2.
The statute before us is a Part of the pre-2015 version of the Article criminalizing certain invasions of privacy, OCGA § 16-11-60 et seq. The statute before us broadly declares, "No evidence obtained in a manner which violates any of the provisions of this part shall be admissible in any court of this state except to prove violations of this part." OCGA § 16-11-67.
Unlawful eavesdropping or surveillance is one such violation. OCGA § 16-11-62. Specifically, it is unlawful for "[a]ny person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in *57 any private place and out of public view[.]" OCGA § 16-11-62 (2). There are exceptions, one of which I will turn to shortly.
The majority focuses on the phrase "private place," a defined term under former OCGA § 16-11-60 (3) (and redefined in the 2015 version). Drawing on Fourth Amendment law, the majority concludes that no part of a police station can be a private place. Majority at page 410.
But Fourth Amendment law is an uncertain guide to construction of the pre-2015 version of OCGA § 16-11-62 now before us. As Justice Nahmias emphasized in his special concurrence to State v. Cohen , 302 Ga. 616, 807 S.E.2d 861 (2017), it is dubious to look
even for guidance to modern "reasonable expectation of privacy" Fourth Amendment jurisprudence in interpreting the pre-2015 statutory language defining a "private place" for purposes of OCGA § 16-11-62 (2) as "a place where one is entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance[" because t]hat language was approved by the General Assembly in April 1967, and ... clearly did not refer to the revolution in Fourth Amendment jurisprudence that occurred only later that year, when in December the United States Supreme Court ushered in a new standard for determining the reach of the constitutional privacy protection and first used the term "reasonable expectation of privacy" in Katz v. United States , 389 U. S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).
Cohen , 302 Ga. at 633, 807 S.E.2d 861 (Nahmias, J., concurring in part and concurring specially in part).
Fourth Amendment considerations aside, the majority's conclusion that an interview room in a police station is not a private place is, I suppose, plausible. But as we are talking about a woman alone in a small room with the door shut, it is not compelling.
And there is a countervailing consideration, which I find dispositive. One of the exceptions to OCGA § 16-11-62 (2) provides that it is not unlawful "[t]o use any device to observe, photograph, or record the activities of persons incarcerated in any jail, correctional *413 institution, or other facility in which persons who are charged with or who have been convicted of the commission of a crime are incarcerated , provided that such equipment shall not be used while the prisoner is discussing his or her case with his or her attorney[.]" *58 OCGA § 16-11-62 (2) (A) (emphasis added).
I would hold that police stations are among the "other facilit[ies]" covered by subsection (2) (A). If not, it is difficult to imagine what sort of institutions would fall within that same general kind or class. See Wilson v. Clark Atlanta Univ., 339 Ga. App. 814, 834 (2), 794 S.E.2d 422 (2016) (invoking the principles of noscitur a sociis ("it is known by its associates") and ejusdem generis ("of the same class or nature")). And we should not construe "other facilit[ies]" to be without meaning. See Fed. Deposit Ins. Corp. v. Loudermilk , 305 Ga. 558, 569-76 (2), 826 S.E.2d 116 (2019).
Necessarily implicit in subsection (2) (A) is a recognition that there are places in jails, correctional institutions, and similar facilities where incarcerated persons would otherwise be "entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance." Former OCGA § 16-11-60 (3). Indeed it appears that recordings like the one at issue - when made of incarcerated persons - fall squarely within the contemplations of subsection (2) (A).
But as the majority notes, Ms. Wilson was not incarcerated or charged with a crime. So our analysis must reckon with the "venerable maxims expressio unius est exclusio alterius (expression of one thing implies exclusion of another) and expressum facit cessare tacitum (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)." State v. Davis , 303 Ga. 684, 692 (2), 814 S.E.2d 701 (2018). The express authorization in subsection (2) (A) to record incarcerated persons in such facilities implicitly excludes authorization to record other persons, such as Ms. Wilson.