310 Ga. 331
FINAL COPY

S19G1138, S19G1143. ATLANTA WOMEN'S SPECIALISTS, LLC
et al. v. TRABUE et al. (two cases).
S19G1140, S19G1141, S19G1142.  ANGUS v. TRABUE et al.
(three cases).

BOGGS, Justice.

We granted certiorari to the Court of Appeals in these five consolidated appeals to address two discrete issues — one related to pleading vicarious liability, and the other related to vicarious liability and apportionment. See *Trabue v. Atlanta Women's Specialists*, 349 Ga. App. 223 (825 SE2d 586) (2019). Specifically, we asked the parties to brief the following two questions: (1) Did the Court of Appeals err in holding that the plaintiffs in this medical malpractice action sufficiently pled a claim for vicarious liability against defendant Atlanta Women's Specialists, LLC (AWS) based on the conduct of Dr. Rebecca Simonsen?; and (2) Did the Court of Appeals err in holding that, to obtain apportionment of damages with regard to the negligence of Dr. Simonsen, the defendants were

required to comply with OCGA § 51-12-33 (d) by filing a pretrial notice of nonparty fault? As explained below, we answer both questions in the negative and affirm the Court of Appeals' judgment.

1. In August 2009, Keith Trabue's wife, Shannon, suffered a catastrophic brain injury resulting from pulmonary edema leading to full cardiac arrest within days of giving birth to the couple's daughter at Northside Hospital in Atlanta. At the hospital, Shannon was treated by physician-employees of AWS, including Dr. Stanley Angus and Dr. Simonsen. Trabue and the bank serving as his wife's conservator (Plaintiffs) later filed a medical malpractice action naming as defendants only Dr. Angus and AWS, although the complaint contained allegations regarding Dr. Simonsen's conduct and alleged that AWS was vicariously responsible for the acts and omissions of both Dr. Angus and Dr. Simonsen.[1] The complaint did not allege any independent acts of negligence on the part of AWS.

---

[1] The parties stipulated at trial that Dr. Angus and Dr. Simonsen were agents and employees of AWS acting in the course and scope of their employment when they provided medical care to Shannon. See OCGA § 51-2-2 ("Every person shall be liable for torts committed by . . . his servant by his

2

At a two-week trial in 2017, after the close of the evidence, Dr. Angus and AWS, who were represented by the same counsel, asked the court to require the jury to assess the percentages of fault of Dr. Angus and Dr. Simonsen and to apportion the damages between Dr. Angus and AWS under OCGA § 51-12-33 (b), which says:

> Where an action is brought against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person. . . .

The trial court denied the request to require the jury to apportion damages between Dr. Angus and AWS based on the percentages of fault of Dr. Angus and Dr. Simonsen. The court relied in part on OCGA § 51-12-33 (d), which says:

> (1) Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault.

command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily.").

3

(2) The notice shall be given by filing a pleading in the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing the nonparty to be at fault.

It is undisputed that Plaintiffs did not enter into a settlement agreement with Dr. Simonsen and that neither Dr. Angus nor AWS filed a pretrial pleading alleging that Dr. Simonsen was wholly or partially at fault for Shannon's injuries.

The jury found in favor of Plaintiffs. On a special verdict form, the jury found that negligence by both Dr. Angus and Dr. Simonsen was a contributing proximate cause of Shannon's injuries. The jury awarded Plaintiffs almost $46 million in damages.

Dr. Angus and AWS filed a motion for new trial, arguing among other things that the trial court erred by not requiring the jury to assess the percentages of fault of Dr. Angus and Dr. Simonsen and to apportion the damages between Dr. Angus and AWS accordingly. The trial court agreed and ordered a new trial on the issue of apportionment but otherwise denied the motion.

4

On interlocutory appeal, Dr. Angus and AWS, now represented by separate counsel, argued among other things that Plaintiffs did not sufficiently plead a claim for vicarious liability against AWS based on the conduct of Dr. Simonsen. Plaintiffs, for their part, argued among other things that the trial court erred in ordering a new trial as to apportionment because Dr. Angus and AWS did not file a notice designating Dr. Simonsen as a nonparty who was wholly or partially at fault for Shannon's injuries, as required by OCGA § 51-12-33 (d). The Court of Appeals rejected Dr. Angus and AWS' pleading argument and reversed the grant of a new trial as to apportionment, in part due to Dr. Angus and AWS' failure to comply with OCGA § 51-12-33 (d). Further facts can be found in the opinion of the Court of Appeals. See *Trabue*, 349 Ga. App. at 224-227.

2. Dr. Angus and AWS contend that Plaintiffs did not sufficiently plead a claim for vicarious liability against AWS based on Dr. Simonsen's conduct. We disagree.

Georgia is a notice pleading jurisdiction. See *Bourn v. Herring*, 225 Ga. 67, 70 (166 SE2d 89) (1969) ("The Civil Practice Act . . . has

eliminated issue pleading and substituted notice pleading.").

> Generally, our Civil Practice Act (CPA) advances liberality of pleading. Under OCGA § 9-11-8 (a) (2), an original complaint, or any other pleading that sets forth a claim for relief, shall contain a short and plain statement of the claims showing that the pleader is entitled to relief; and a demand for judgment for the relief to which the pleader deems himself entitled. Under this provision, a complaint need only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Tenet HealthSystem GB v. Thomas*, 304 Ga. 86, 89 (816 SE2d 627) (2018) (citations and punctuation omitted).

> It must be remembered that the objective of the CPA is to avoid technicalities and to require only a short and plain statement of the claim that will give the defendant fair notice of what the claim is and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details.

*Dillingham v. Doctors Clinic, P.A.*, 236 Ga. 302, 303 (223 SE2d 625) (1976).

The concept of notice pleading applies fully to claims for vicarious liability. In the context of a medical malpractice action, a complaint sufficiently pleads a claim for vicarious liability against a medical practice by alleging that the practice is "vicariously liable

6

for the negligence of the 'physicians that attended [the patient]' and that 'the treating physicians were actual and/or ostensible agents or otherwise servants and/or employees of'" the practice. *Oller v. Rockdale Hosp.*, 342 Ga. App. 591, 593 (804 SE2d 166) (2017) (punctuation and emphasis omitted). A plaintiff need not specifically name in the complaint each physician-employee whose acts or omissions form a basis for the claim of vicarious liability against the medical practice. See id. See also id. at 596 (Dillard, C. J., concurring fully and specially) ("[The defendant medical practice] essentially argues that every theory of vicarious liability against it involving the treatment of [the patient] by its physicians must include each treating physician's name in the . . . complaint. But as ably explained by the majority, that is not how notice pleading works."); *Health Mgmt. Assoc. v. Bazemore*, 286 Ga. App. 285, 287-288 (648 SE2d 749) (2007) (holding that the complaint stated a claim for vicarious liability against the employer defendant even though it did not name the allegedly negligent employee).

Here, the operative complaint contained 27 paragraphs of

7

"Factual Allegations," three of which explicitly focused on Dr. Simonsen's conduct. Paragraph 19 alleged:

> By 6:50 a.m. [on August 24, 2009], Shannon's blood pressure was 151/70. At 1:30 p.m., Dr. Rebecca Simonsen was informed of the recent blood pressures, shortness of breath, decreased urinary output, and pulse oxymetry [sic] of 95%. Dr. Simonsen ordered incentive spirometry per respiratory therapy. Respiratory therapy noted clear lungs.

Paragraph 20 alleged:

> At 10:45 p.m., Shannon was again seen by Dr. Simonsen, who noted blood pressures of 149/58, 157/65, 175/73, 155/48, 151/68, [and] 174/77 and hourly urine output of 50cc/35cc/55cc/28cc/25cc/36cc. She noted the lungs were clear and ordered the infusion of [a] normal saline bolus of 500 ml.

And Paragraph 22 alleged: "On August 25, 2009 at 12:50 a.m., Dr. Simonsen was informed of the urine output for the last 12 hours and an order was received for an additional bolus of 1000 ml of normal saline."

The "Factual Allegations" section of the complaint was followed by two counts. Count I — titled "Claim for Vicarious or Imputed Liability as to Defendant AWS" — contained just four paragraphs,

8

with the first paragraph specifically incorporating the "Factual Allegations" by reference. Paragraph 36 then alleged:

> At all times applicable to this Complaint, Defendant [Dr.] Angus was the actual, apparent, or ostensible agent or employee of Defendant AWS, acting within the scope of his agency or employment, in pursuit of Defendant AWS's business so that his wrongful acts and omissions are imputed to Defendant AWS and Defendant AWS is subject to liability for injuries and harm proximately caused by his wrongful acts or omissions.

Paragraph 37 alleged:

> At all times applicable to this Complaint, [another AWS physician-employee not named as a defendant] and Rebecca Simonsen, M.D. were the actual, apparent, or ostensible agents or employees of Defendant AWS, acting within the scope of their agency or employment, in pursuit of Defendant AWS's business so that their wrongful acts and omissions are imputed to Defendant AWS and Defendant AWS is subject to liability for injuries and harm proximately caused by their wrongful acts or omissions.

Finally, Paragraph 38 alleged:

> Defendant AWS and [another AWS physician-employee not named as a defendant] and [Dr.] Simonsen are hereby put on notice, by copy of this complaint, that in the event Defendant [Dr.] Angus and/or Defendant AWS allege that the actions of . . . Dr. Simonsen, [the other nonparty doctor,] or any other person acting within the scope of his/her agency or employment with

9

Defendant AWS, proximately or legally caused or contributed to the injuries suffered by Plaintiffs, Plaintiffs reserve the right to add said doctor as a defendant herein.[2]

As the Court of Appeals correctly explained, the operative complaint

> specifically identified Dr. Simonsen as an agent or employee of AWS, acting within the scope of her employment or agency, such that her acts and omissions are imputed to AWS, which is vicariously liable for the resulting injuries and harm to Shannon, and the [complaint] set forth factual allegations to support the plaintiffs' vicarious liability claim[ ] against AWS for Dr. Simonsen's actions. Thus, the trial court properly concluded that the complaint[ ] satisf[ied] Georgia's forgiving notice-pleading requirements with respect to the vicarious liability claim against AWS for the negligence of Dr. Simonsen.

*Trabue*, 349 Ga. App. at 228-229.

Dr. Angus and AWS seek to avoid this straightforward conclusion primarily by pointing to Paragraph 38 of the complaint,

---

[2] Count II — titled "Claim for Negligence as to Defendant [Dr.] Angus" — alleged among other things that Dr. Angus "failed to exercise that degree of care and skill required of physicians generally under similar conditions and like surrounding circumstances, and his failure to exercise the appropriate degree of care and skill proximately caused or contributed to the injuries suffered by Shannon."

which put Dr. Angus and AWS "on notice" that in the event that they alleged that the actions of Dr. Simonsen or anyone else acting within the scope of his or her agency or employment with AWS proximately caused or contributed to Shannon's injuries, Plaintiffs reserved the right "to add said doctor as a defendant herein." Dr. Angus and AWS contend that in Paragraph 38, Plaintiffs disclaimed any allegation of negligence on the part of Dr. Simonsen. This strained reading of the complaint not only conflicts with the concept of notice pleading, but also contradicts the provision of the Civil Practice Act that expressly states:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them, if made independently, would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has, *regardless of consistency* . . . .

OCGA § 9-11-8 (e) (2) (emphasis supplied). Thus, as Plaintiffs correctly argue, quoting *Mbigi v. Wells Fargo Home Mtg.*, 336 Ga. App. 316 (785 SE2d 8) (2016), the complaint "could have expressly

11

alleged that [Dr.] Simonsen was negligent in one paragraph and alleged that she was not negligent in another. It would still state a claim for her negligence: the plaintiff may 'plead alternative and inconsistent theories in his complaint.'" Id. at 321.

AWS also argues that the complaint did not include enough detail regarding Plaintiffs' vicarious liability claim based on Dr. Simonsen's conduct to give the defendants a fair opportunity to frame a responsive pleading. See *Osprey Cove Real Estate v. Towerview Constr.*, 343 Ga. App. 436, 437 (808 SE2d 425) (2017) (stating that the required short and plain statement of the claims showing that the pleader is entitled to relief "must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading" (citation and punctuation omitted)). But Dr. Angus and AWS did not file a motion for more definite statement. See OCGA § 9-11-12 (e).[3] See also

---

[3] OCGA § 9-11-12 (e) says:
**Motion for more definite statement.** If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a proper responsive

*Cochran v. McCollum*, 233 Ga. 104, 105 (210 SE2d 13) (1974) ("The proper remedy for seeking more particularity is by motion for a more definite statement at the pleading stage or by the rules of discovery thereafter." (citation omitted)).

Moreover, Dr. Angus and AWS could — and did — frame a responsive pleading to Plaintiffs' vicarious liability claim based on Dr. Simonsen's conduct. Dr. Angus and AWS' answer denied the first sentence of Paragraph 20, which alleged that "[a]t 10:45 p.m. [on August 24, 2009], Shannon was again seen by Dr. Simonsen, who noted blood pressures of 149/58, 157/65, 175/73, 155/48, 151/68, [and] 174/77 and hourly urine output of 50cc/35cc/55cc/28cc/25cc/36cc." And in response to Paragraph 22 of the complaint, the answer "den[ied] that Dr. Simonsen was informed of the urine output for the last 12 hours at 12:50 a.m. on August 25, 2009." Dr. Angus and AWS

pleading, he shall nevertheless answer or respond to the best of his ability, and he may move for a more definite statement. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 15 days after notice of the order, or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

also denied Paragraphs 37 and 38 of the complaint, including the allegation that "AWS is subject to liability for injuries and harm proximately caused by [the] wrongful acts or omissions" of Dr. Simonsen and another AWS physician-employee who was not named as a defendant. Furthermore, the answer included the following as Dr. Angus and AWS' "Second Defense":

> At no time did Dr. Angus *or any other agent or employee of Atlanta Women's Specialists, LLC* breach or violate the applicable standard of care. At all times material to the care and treatment of Shannon Trabue, Dr. Angus *and the other agents and employees of Atlanta Women's Specialists, LLC* met or exceeded the applicable standard of care.

(Emphasis supplied.)

At other points in their briefing, Dr. Angus and AWS seem to suggest that the problem is that Plaintiffs did not include in the complaint a separate count alleging medical malpractice against Dr. Simonsen individually as they did with Dr. Angus in Count II. But nothing in the Civil Practice Act required Plaintiffs to name Dr. Simonsen as a defendant in order to seek recovery from Dr. Simonsen's employer for her negligence based on a theory of

14

vicarious liability. It simply is not and never has been required that a complaint seek to hold liable each negligent nonparty employee of a corporate defendant in order to hold the corporation liable for the negligence of its nonparty employees. See *Miller v. Grand Union Co.*, 270 Ga. 537, 538 (512 SE2d 887) (1999) ("[A]n injured party who enters into a covenant not to sue an employee . . . will not be barred from pursuing a claim against the unnamed employer who may be vicariously liable."). Accordingly, the Court of Appeals did not err in holding that Plaintiffs sufficiently pled a claim for vicarious liability against AWS based on Dr. Simonsen's conduct.[4]

---

[4] Dr. Angus and AWS' other arguments, concerning the contemporaneous expert affidavit filing requirement of OCGA § 9-11-9.1, the statute of limitation, and the statute of repose, are not responsive to the questions that we asked the parties to brief in our orders granting their petitions for certiorari. We decline to address these additional issues on which we decided not to grant certiorari. See, e.g., *Martin v. Six Flags Over Ga. II*, 301 Ga. 323, 332 n.6 (801 SE2d 24) (2017) (declining to address additional issue that was briefed by the parties but on which this Court decided not to grant certiorari). And given our conclusion that the complaint sufficiently pled a claim for vicarious liability against AWS based on Dr. Simonsen's conduct, we need not address Plaintiffs' arguments under the right-for-any-reason doctrine that the pretrial order superseded the allegations of the complaint or that AWS forfeited its statute of limitation and statute of repose defenses by failing to raise them in either the answer or the pretrial order.

3. Dr. Angus also contends that he was entitled under subsection (b) of the apportionment statute, OCGA § 51-12-33, to have the jury apportion damages between him and AWS based on his own percentage of fault and the percentage of fault of Dr. Simonsen. Plaintiffs respond that to obtain apportionment of damages based on the percentage of fault of Dr. Simonsen, Dr. Angus was required to comply with subsection (d) of the apportionment statute, and it is undisputed that he did not do so. Even if imputed negligence based on the doctrine of respondeat superior were subject to fault-based apportionment under OCGA § 51-12-33 when the negligent acts of more than one employee are at issue — which we assume without deciding for purposes of this opinion, but see *Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558, 573, 575 n.20 (826 SE2d 116) (2019) — we hold that a defendant employee like Dr. Angus, who wants to reduce a potential damages award against him by having the jury apportion damages between him and his defendant employer based on an assessment of the fault

16

of a nonparty co-employee, would have to comply with the requirements of subsection (d) of the apportionment statute.[5]

The text of the apportionment statute distinguishes "liability" from "fault." See, e.g., OCGA § 51-12-33 (f) (2) ("Where *fault* is assessed against nonparties pursuant to this Code section, findings of *fault* shall not subject any nonparty to *liability* in any action or be introduced as evidence of *liability* in any action." (emphasis supplied)). The text also distinguishes between "named parties," OCGA § 51-12-33 (f) (1) — that is, "the plaintiff" or "a defending party," OCGA § 51-12-33 (a), (d), (g) — and "nonparties," OCGA § 51-12-33 (d), (f), and provides specific rules for how each is to be treated in the apportionment process. See *Zaldivar v. Prickett*, 297 Ga. 589, 598 n.6 (774 SE2d 688) (2015) ("Subsection (c) . . . is properly

_____

[5] In *Loudermilk*, we held that "where the fault of one person is legally imputed to another person who is part of the same joint enterprise, we cannot say that there is a legal means of dividing fault 'among the persons who are liable.'" 305 Ga. at 573 (quoting OCGA § 51-12-33 (b)). The dissent attempts to distinguish *Loudermilk* on the ground that "there is no 'joint enterprise' between Dr. Angus and AWS with respect to the actions of the other AWS employees." Dissenting op. at 343 n.11. But the dissent does not explain why two physicians who are part of the same medical practice and caring for the same patient could not be engaged in a joint enterprise, either factually based on the record in this case or as a matter of law.

17

understood to require the consideration of the 'fault' of four classes of persons or entities: plaintiffs (also covered in subsection (a)), defendants with liability (also covered in subsection (b)), defendants without liability, and nonparties.").

Dr. Angus focuses on subsection (b)'s statement that the jury, "in its determination of the total amount of damages to be awarded, if any, shall . . . apportion its award of damages among the persons who are liable according to the percentage of fault of each person." But the apportionment statute elsewhere makes clear that a nonparty cannot be held liable. See OCGA § 51-12-33 (f). As we have previously explained, subsection (b) "simply does not concern nonparties"; "those 'who are liable' — the subjects of subsection (b) — necessarily must be limited to *named defendants*." *Zaldivar*, 297 Ga. at 600 n.7 (emphasis supplied). Dr. Angus does not dispute — because he cannot — that Dr. Simonsen is not a named defendant in this case. See, e.g., OCGA § 9-11-4 (b) (requiring that a summons contain "the names of the parties" and "be directed to the defendant"). Thus, Dr. Angus could not obtain apportionment of

18

damages between himself and Dr. Simonsen based on their respective percentages of fault under subsection (b) of the apportionment statute.

To obtain apportionment of damages between himself and Dr. Simonsen based on their respective percentages of fault, Dr. Angus was required to comply with subsection (d) of the apportionment statute. Paragraph (d) (1) allows the trier of fact to "consider[ ]" the negligence or fault of a "nonparty" like Dr. Simonsen in only two circumstances: if the plaintiff entered into a settlement agreement with the nonparty (which did not happen here), or "if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault." Thus, if Dr. Angus believed that Dr. Simonsen was wholly or partially at fault for Plaintiffs' injuries and wanted the jury to consider that fault for purposes of apportionment, OCGA § 51-12-33 (d) (2) provided the mechanism for him to obtain an assessment of her fault and apportionment of the damages between them based on their respective percentages of fault. All he had to do was file a pleading

19

at least 120 days before the trial date naming Dr. Simonsen, providing her last known address, and briefly stating the basis for his belief that she was wholly or partially at fault for Plaintiffs' injuries. See OCGA § 51-12-33 (d) (2).

Requiring a defendant who wants to reduce a potential damages award against him based on the fault of a nonparty to identify the nonparty and state the basis for his belief that the nonparty is wholly or partially at fault for the plaintiff's injuries several months before trial makes eminent sense from a procedural perspective. In order to obtain an accurate assessment of relative fault so that any damages award can be properly apportioned, it is crucial to know before the trial starts who the people are that the parties claim are responsible for the plaintiff's alleged injuries. The plaintiff makes those people known by naming them as defendants or by settling with them before trial. See OCGA § 51-12-33 (b), (d) (1). When the plaintiff does not include them as defendants, a defendant makes those people known by filing a notice of nonparty fault under subsection (d). In the absence of such a requirement, a

defendant could wait until the evidence is closed and the trial is almost over to suddenly demand that the trial court require the jury to assess the percentages of fault of any number of people whose names came up briefly in the testimony or appeared in an exhibit that has been admitted and to apportion any damages award based on their fault.

The filing of a notice of nonparty fault gives the plaintiff several options. For example, the plaintiff may seek to amend the complaint to add the designated nonparty as a defendant. See OCGA §§ 9-11-15 (a) (permitting amendment as of right at any time before entry of a pretrial order and thereafter by written consent of the adverse party or by leave of court, which "[l]eave shall be freely given when justice so requires"), 9-11-21 ("Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. . . ."); *Western Sky Financial v. State of Ga.*, 300 Ga. 340, 357 (793 SE2d 357) (2016) (noting that OCGA §§ 9-11-15 (a) and 9-11-21 "must be read in pari materia"). Or, to cite another example, the

plaintiff may respond to the notice of nonparty fault by presenting evidence and argument at trial showing that the nonparty was not at fault (or not as much at fault as the defendant argues), thereby ensuring a full (or greater) recovery from the named defendants. The requirement that a defendant file a notice of nonparty fault to seek apportionment of damages against a nonparty thus advances the truth-seeking objective of the civil trial process and prevents unfair surprise at trial.

For the same reasons, we hold that a defendant employee like Dr. Angus who wants to reduce a potential damages award against him by having the jury apportion damages between him and his defendant employer based on the fault of a nonparty co-employee must comply with the requirements of subsection (d).[6] As the Colorado Court of Appeals explained in interpreting an apportionment statute similar to ours, requiring a defendant to

---

[6] As noted above, for purposes of this opinion, we assume, without deciding, that imputed negligence based on the doctrine of respondeat superior is subject to fault-based apportionment under OCGA § 51-12-33 when the negligent acts of an employer's multiple employees are at issue. We also note that Dr. Angus did not allege any independent negligence by AWS.

designate the alleged underlying tortfeasor or tortfeasors who breached a duty to the plaintiff furthers the notice function of a provision like subsection (d) by giving the plaintiff the opportunity to amend the complaint to add the designated nonparty as a defendant or, alternatively, to present evidence and argument at trial defending the nonparty to ensure that the plaintiff receives a greater recovery from the named defendants. See *Just In Case Business Lighthouse v. Murray*, 383 P3d 1, 17 (Colo. App. 2013), rev'd in part on other grounds, 374 P3d 443 (Colo. 2016).[7] Accordingly, the Court of Appeals did not err in holding that, to obtain apportionment of damages against AWS based on Dr. Simonsen's negligence, Dr. Angus was required to comply with OCGA § 51-12-33 (d).

The dissent asserts that we offer "no explanation" for why Dr. Angus cannot obtain apportionment of damages against AWS based on the imputed negligence of Dr. Simonsen. Dissenting op. at 344.

---

[7] We have looked to Colorado decisions before for guidance. See, e.g., *Zaldivar*, 297 Ga. at 598-599.

That is incorrect. As explained above, allowing him to do so would undermine the notice provision of the apportionment statute. And contrary to the dissent's claim, our opinion is not limited to "cases involving apportionment between co-defendants in an employment relationship," id., but rather confirms that a defendant must file a notice of nonparty fault naming *any* nonparty upon whose fault the defendant seeks apportionment of damages.[8]

*Judgment affirmed. All the Justices concur, except Warren, J., who concurs fully in Divisions 1 and 2 and in judgment only in Division 3, and Bethel, J., who dissents in part. Blackwell, J., not participating, and Peterson, J., disqualified.*

---

[8] Because we did not grant certiorari on issues other than those discussed above, we decline to address Dr. Angus' and AWS' arguments regarding the propriety of the trial court's grant of a new trial limited to the issue of apportionment and the Court of Appeals' decision to vacate the trial court's ruling that it was premature to address Plaintiffs' request for attorney fees and expenses. See, e.g., *Martin*, 301 Ga. at 332 n.6. And in light of our holding that Dr. Angus was required to comply with OCGA § 51-12-33 (d) to obtain apportionment of damages against AWS based on Dr. Simonsen's negligence, we need not address Plaintiffs' arguments that Dr. Angus forfeited his claim for apportionment by failing to list that issue in the pretrial order, failing to offer any evidence or argument at trial providing the jury with a rational basis for apportioning damages based on the respective percentages of fault of him and Dr. Simonsen, and failing to preserve in the trial court the arguments for apportionment that he raised on appeal.

BETHEL, Justice, dissenting in part.

I concur with the Court's opinion with respect to Divisions 1 and 2. Moreover, I agree with the bulk of what is said in Division 3 about apportionment with respect to the non-party Dr. Simonsen. I must respectfully dissent, however, because while it is true that AWS's liability is based on its employees' negligent conduct, AWS is itself a named party. Thus, under its plain language, OCGA § 51-12-33 (b) — and not OCGA § 51-12-33 (d) — applies to the apportionment of damages between Dr. Angus and AWS.

As the Court's opinion correctly notes, Dr. Angus, by his own choice, could not seek apportionment between himself and Dr. Simonsen, who was not named as a party in this case. Dr. Angus certainly could have provided notice 120 days or more before trial of his intent to assert that Dr. Simonsen was wholly or partially at fault in this matter, but he did not. See OCGA § 51-12-33 (d) (1). Moreover, Dr. Angus did not include apportionment of liability as an

issue to be tried in the pre-trial order.[9] Obviously, there would be no reason for AWS to pursue this course of action because its liability was equally yoked to both Dr. Angus and Dr. Simonsen. AWS, however, was a named defendant whose potential and actual liability extended beyond that of Dr. Angus, and I see no basis in the statute's text for determining that the provision related to apportionment with nonparties — paragraph (d) (1) — prevents apportionment between Dr. Angus and AWS.

The complaint in this case stated claims against both Dr. Angus and AWS. As the Court's opinion correctly holds in Division 2, the cognizable claims against AWS include a claim that Dr. Simonsen's care was professionally deficient. That claim exposed AWS to potential liability for Dr. Simonsen's acts, and in the statute's language, "fault." The jury's finding that Dr. Simonsen was at fault converted that potential liability into actual liability for AWS. But this liability of AWS, a named defendant, is not based on

---

[9] Indeed, strong arguments have been made that Dr. Angus waived his claim for apportionment. As noted below, I would remand this case to the Court of Appeals for a determination on that question.

26

Dr. Angus's fault. Indeed, the majority appears willing to assume without deciding that Dr. Simonsen's fault is imputed to AWS for liability purposes.[10] Accordingly, even though Dr. Angus was also found to be at fault and liable, as a named party in the suit, he should be able to assert OCGA § 51-12-33 (b) with respect to AWS's liability for Dr. Simonsen's professional negligence.[11]

The Court's opinion suggests that apportionment with respect to vicarious liability is dependent on the availability of apportionment with respect to the agent or employee whose fault

---

[10] This assumption that fault is imputed to the vicariously liable party is essential to the operation of OCGA § 51-12-33. Otherwise, a claim in respondeat superior would be extinguished by the requirement that liability be apportioned based on the percentage of the party's *fault*.

[11] *Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558 (826 SE2d 116) (2019), is distinguishable from our case because there is no "joint enterprise" between Dr. Angus and AWS with respect to the actions of the other AWS employees. In their capacity as *employees* of AWS, neither Dr. Angus nor Dr. Simonsen could be called upon to be legally responsible for the actions of AWS other than those they took themselves. And the claims in this case against AWS are in its capacity as employer of both doctors. While a board of directors, partners in a law or medical practice, or other group united under the law may have indivisible liability as individuals for the actions of the whole or individual members acting on behalf of the whole, I am aware of no law applicable to Georgians deeming an employee to be in joint enterprise with his employer relative to the actions of fellow employees. Stated differently, there is neither a doctrine of "respondeat peer" nor "respondeat inferior" under the laws of Georgia.

gives rise to the liability. But I find neither textual support nor any logical requirement to so conclude. Further, while the Court's opinion is correct that the statute differentiates between *liability* and *fault*, I discern no reason why Dr. Angus cannot obtain apportionment of liability between himself and AWS when AWS's fault exceeds his own. See OCGA § 51-12-33 (b) (providing that the factfinder shall "apportion its award of damages among the persons who are liable according to the percentage of fault of each person"). Surely, under the statutory language, AWS qualifies as a person who is liable. And as between Dr. Angus and AWS, there can be no serious suggestion that Dr. Simonsen's fault should be imputed to Dr. Angus. The majority recognizes that Dr. Simonsen's negligence is imputed to AWS and assumes without deciding that the fault associated with such negligence is apportionable. But the majority offers no explanation for why it cannot be apportioned in this case. The majority reasons that because apportionment was not av,ailable with respect to Dr. Simonsen under OCGA § 51-12-33 (d) it must not be available with respect to AWS under OCGA § 51-12-33 (b)

28

because AWS's liability derives from the actions of Dr. Simonsen. But, I see no vicariously liable defendant exception to the provisions of OCGA § 51-12-33 (b). No one is seeking apportionment with respect to Dr. Simonsen in the instant case. Rather, Dr. Angus is seeking apportionment with AWS who is a named party and who is liable for actions beyond Dr. Angus's.

Additionally, in an apparent attempt to limit its opinion's reach to cases involving apportionment between co-defendants in an employment relationship, the majority creates more questions. While the majority articulates its holding in terms of an employee co-defendant seeking apportionment with an employer with respect to the acts of a non-party co-worker, it provides no reason for limiting the reach to such circumstances. If a named defendant must provide a notice of non-party fault under the circumstances described by the majority, then it follows that a defendant must provide such notice as to non-party employees even where the employer is not the defendant's employer or the non-party employees are not the defendant's co-workers when the theory of

29

liability against the employer is one of respondeat superior.

Consider a case where two corporate defendants are sued for damages caused by their respective employees under a theory of respondeat superior. Further, assume that none of the individual employees were sued in their individual capacities and that neither defendant provided pre-trial notice of intent to blame any non-party employee. At the imagined trial, the defendants both maintain that neither business's employees were negligent or otherwise at fault and that the jury should find for the defense outright. If the jury finds for the plaintiff, and determines that defendant number 1's employees were 5% at fault and defendant number 2's employees were 95% at fault, the majority's opinion suggests that the defendants are essentially jointly and severally liable for the full claim. But neither the apportionment statute's text nor the nature of vicarious liability require that result. As between these two named defendants, there should be apportionment pursuant to subsection (b). That either or both of these fictitious defendants *could* have employed OCGA § 51-12-33 (d) to articulate a specific

claim for apportionment with regard to a *non-party* does not deprive them of their apportionment right under OCGA § 51-12-33 (b) with regard to a *party*. For these reasons, I respectfully dissent in part.[12]

Decided November 2, 2020.

Certiorari to the Court of Appeals of Georgia — 349 Ga. App. 223.

*Schreeder, Wheeler & Flint, David H. Flint, Michael D. Flint, Jamie L. Kastler; Holland & Knight, Laurie W. Daniel, Matthew D. Friedlander; Smith, Gambrell & Russell, Leah Ward Sears, Colin D. Delaney; Huff Powell & Bailey, Daniel J. Huff, Taylor C. Tribble*, for Atlanta Women's Specialists, LLC and Stanley Angus.

*Stone Law Group, William S. Stone, Ryals D. Stone, James W. Stone, Michael G. Regas II; Bondurant, Mixson & Elmore, Michael B. Terry, Naveen Ramachandrappa*, for Keith Trabue and Advocacy Trust of Tennessee, LLC.

*Keri F. Conley; Donald J. Palmisano, Jr.; Tracy M. Baker; Gilbert Harrell Sumerford & Martin, Judson H. Turner; Amy W. Adelman; Weathington McGrew, Paul E. Weathington, David C. Hanson, Jessica T. Holland; Elizabeth M. Leddy*, amici curiae.

---

[12] Due to this case's procedural posture, the specific questions posed to the parties, and the limited briefing on the question, I would remand for further consideration of the plaintiffs' waiver argument with respect to Dr. Angus's apportionment claim with respect to AWS.