**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 27, 2023**

# In the Court of Appeals of Georgia

A23A0118. GOLDEN v. FLOYD HEALTHCARE
    MANAGEMENT, INC. d/b/a FLOYD MEDICAL CENTER.

A23A0119. FLOYD HEALTHCARE MANAGEMENT, INC. d/b/a
    FLOYD MEDICAL CENTER v. GOLDEN.

HODGES, Judge.

In this medical malpractice renewal action, Jami Lynn Golden sued Floyd Healthcare Management, Inc., d/b/a Floyd Medical Center ("Floyd Medical") and Floyd Emergency Physicians, LLC ("Floyd Physicians") (collectively, "the defendants") for "medical and hospital negligence" ("Count 1") and ordinary negligence ("Count 2") arising from injuries she sustained due to an alleged failure to properly diagnose sepsis. Floyd Medical moved to dismiss Golden's renewal action, arguing that Golden's claim for ordinary negligence in Count 2 asserted a new claim not brought in the original action, that the renewal action was barred by the

five-year statute of repose for medical malpractice actions, and that the renewal action was barred by Golden's failure to comply with the conditions set forth in the order granting her motion to voluntarily dismiss her original action in federal court.[1] The Superior Court of Floyd County granted Floyd Medical's motion to dismiss as to Golden's claim for ordinary negligence in Count 2, but denied the motion as to Golden's alleged failure to satisfy any conditions imposed in her voluntary dismissal order and found that her claims of professional negligence were not precluded by the five-year medical malpractice statute of repose, effectively concluding that COVID-19 emergency orders issued by then-Georgia Supreme Court Chief Justice Melton tolled the statute of repose.

We granted both parties' motions for interlocutory appeal and have consolidated these cases for decision. In Case No. A22A0118, Golden appeals that part of the trial court's order dismissing her claim for ordinary negligence in Count 2, arguing that the claim was the same as that raised in her original action and, seemingly alternatively, that the actions of charge nurse Sharon Gaylor constituted ordinary, rather than professional, negligence in support of her assertion that the

---

[1] Floyd Physicians also filed a similar motion to dismiss. However, before the trial court adjudicated its motion, Golden dismissed Floyd Physicians without prejudice as a party defendant.

2

causes of action were the same. In Case No. A22A0119, Floyd Medical appeals that part of the trial court's order denying its motion to dismiss Golden's renewal action in its entirety due to her failure to satisfy certain requirements imposed in the order granting her voluntary dismissal of the original action and because her claims are barred by the medical malpractice statute of repose.

For the following reasons, we first conclude that Count 2 of Golden's renewal action, regardless of whether it is labeled ordinary or professional negligence, presented a new claim not raised in the original action; as a result, we conclude that Count 2 is barred by the two-year statute of limitation for personal injuries.[2] We next hold that Golden's claim against Floyd Medical in Count 1, which is based upon new factual allegations arising from Gaylor's acts or omissions, asserted a new claim which was not part of the original action, and it is likewise precluded. Finally, we conclude that Golden's remaining claims against Floyd Medical in Count 1 of the renewal action, grounded in allegations against the attending physician, physician's assistant, and nurse practitioner, are barred by the five-year medical malpractice

---

[2] Accordingly, we need not resolve the question of whether Count 2 presented a claim of ordinary or professional negligence.

3

statute of repose. Therefore, we affirm in part and reverse in part the trial court's order, and we remand this case with instruction to dismiss Golden's renewal action.[3]

Our standard of review is well settled.

On appeal, we review the grant of any motion to dismiss de novo, and a motion to dismiss should not be granted unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof. We construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor.

(Citation and punctuation omitted.) *Manzanares v. City of Brookhaven*, 352 Ga. App. 293 (834 SE2d 358) (2019). So viewed, the record indicates that Golden worked as a summer 2016 camp counselor at Camp WinShape on the Berry College campus. Golden visited Floyd Emergency Care Center at approximately 8:30 p.m. on July 1, 2016, complaining of abdominal pain, fever, chills, and nausea. Among other readings taken during Golden's triage assessment, medical staff noted that she had a low-grade fever, a heart rate of 118 beats per minute, a white blood cell count of

---

[3] Accordingly, we do not reach Floyd Medical's remaining enumeration of error in Case No. A23A0119 asserting that the trial court erred in denying its motion to dismiss Golden's renewal action due to her failure to satisfy certain conditions imposed by the district court in the original action.

4

4.9, and bands of 15 percent.[4] As a result of these readings, Golden alleged that she satisfied two general internal criteria of "systemic inflammatory response syndrome" (or, SIRS) to be monitored for sepsis — an elevated heart rate and bands in excess of 10 percent.

A nurse practitioner initially suggested that Golden was suffering from an ovarian cyst or endometriosis and administered saline fluid and medications to control her pain. At approximately 2:00 a.m. on July 2, "a computer generated Sepsis Alert concerning . . . Golden activated based on an algorithm that interpreted her vital signs and lab results as being at risk for sepsis[.]" Golden alleged that Gaylor, the charge nurse on duty at the time of the sepsis alert, failed to forward the alert to the attending physician on duty and the primary nurse assigned to Golden, in violation of Floyd Medical's written sepsis alert policy. Golden was prescribed additional pain

---

[4] "[A] band is an immature white cell newly released from the bone marrow[.]" *Clements v. Secretary of Dept. of Health & Human Svcs.*, 1998 U. S. Claims LEXIS 198, *26 (Fed. Cl. 1998); see also *Guzman v. Mem. Hermann Hosp. System*, 409 Fed. Appx. 769, 771 (I) (5th Cir. 2011) ("A high band count indicates that a patient is fighting off an infection."); *Banderas v. United States*, 2012 U. S. Dist. LEXIS 74782, *13 (II) (C. D. Cal. 2012) ("[B]and forms . . . are immature types of white blood cells that appear when the body is stressed and is recruiting even the youngest white blood cells to assist in fighting infection[.]").

medication and discharged approximately one hour after the sepsis alert, with instructions to follow up in two to three days.

Golden's symptoms persisted and her condition worsened throughout the day, including the onset of additional symptoms of a sore throat, headache, dizziness, and shortness of breath. At approximately 4:00 p.m. on July 2, an ambulance transported Golden, by then in septic shock, to Redmond Regional Emergency Care Center for treatment. Medical staff initiated Redmond Regional's sepsis protocol, administered extensive treatment of Golden, and admitted Golden to the Redmond Regional Medical Center Intensive Care Unit. Golden remained in Redmond Regional's ICU for 11 days before transferring to University of Alabama-Birmingham Medical Center for further treatment. As a result of the septic shock, Golden suffered necrosis that required the amputation of parts of her fingers and toes.

A review of the ensuing litigation is necessary to our decision in these cases.

*Golden's Original Action in Federal Court.* On June 30, 2018, Golden filed suit in the United States District Court for the Northern District of Georgia against Floyd Medical, Floyd Physicians, the attending physician, a physician's assistant, and the nurse practitioner who treated Golden while she was a patient at Floyd Medical. Golden's complaint asserted claims for medical and hospital negligence,

6

abandonment, and violations of the Federal Emergency Medical Treatment and Active Labor Act, 42 U. S. C. § 1395 (dd) et seq. The parties actively litigated the federal case for more than two years, with the district court granting at least two discovery extensions, the latest discovery extension expiring on November 2, 2020.

On that last day of the extended discovery period, "just minutes before the close of discovery[,]" Golden filed two expert reports and named more than 40 of her treating physicians as experts who might be called to testify. Ten days following the close of discovery on November 2, 2020, Golden moved to amend her complaint to assert a claim that Floyd Medical was vicariously liable for the negligence or gross negligence of Gaylor, the charge nurse who allegedly failed to forward the sepsis alert to the attending physician on duty.[5] Floyd Medical and Floyd Physicians moved to strike Golden's expert disclosures as well as her expert reports. On June 25, 2021, the district court granted the motion to strike[6] and, two days later, Golden moved to voluntarily dismiss her complaint without prejudice. Floyd Medical and Floyd

---

[5] According to Golden's motion, the facts supporting the proposed amendment were developed in depositions between June 29 and July 2, 2020.

[6] In its order, the district court noted that one of the tardy expert reports "addresses, for the first time, alleged deviations in the standard of care by Sharon Gaylor."

Physicians objected to the proposed dismissal and filed motions for summary judgment on June 28, 2021, asserting that, in the absence of expert testimony, Golden could not prevail on her claims as a matter of law.

In an order entered August 30, 2021, the district court granted Golden's motion for voluntary dismissal and denied as moot her motion to amend and the defendants' motions for summary judgment. The district court also ordered that "all discovery from this case be incorporated into any subsequent action on the *same claims and facts* to preserve the usefulness of that discovery and allow for an expedited discovery and motion schedule in any later action." (Emphasis supplied.)

*Golden's Renewal Action in State Court*. On October 21, 2021, Golden filed a renewal action in the Superior Court of Floyd County against Floyd Medical and Floyd Physicians. The renewal action asserted two claims: (1) "medical and hospital negligence" ("Count 1")[7]; and (2) ordinary negligence ("Count 2"). In support of these claims, Golden alleged, inter alia, that the defendants were vicariously liable for

[7] The entirety of Golden's claim in Count 1, which incorporated 163 preceding paragraphs, is that Floyd Medical is "subject to liability to [Golden] for all her damages resulting from her injuries." Although no attempt to further define a cause of action in Count 1 has been made, the record does not indicate that Floyd Medical moved to dismiss Count 1 specifically on that basis. As a result, the only issue before us, as explained infra, is whether Count 1 is barred by the medical malpractice statute of repose, rather than the relative merit of Count 1.

the negligence of the nurse practitioner and physician's assistant who treated her, the attending physician charged with supervising those individuals, and Gaylor, the charge nurse who allegedly failed to forward the sepsis test results as required. Alternatively, the complaint asserted that the negligence of these individuals could be imputed to one or both of the named defendants. Floyd Medical moved to dismiss the renewal action, primarily arguing that: (1) the complaint was barred by the five-year medical malpractice statute of repose; and (2) Count 2 of the renewal complaint asserted a new claim not brought in the federal action.[8]

In its order granting in part and denying in part Floyd Medical's motion to dismiss, the trial court concluded, relevant to the issues decided in this appeal, that: (1) Chief Justice Melton's emergency orders during the COVID-19 pandemic effectively tolled the statute of repose such that Golden's renewal action was timely; and (2) Golden's claim for ordinary negligence was barred because it was not raised in the original action filed in federal court. The trial court granted the parties' requests for a certificate of immediate review, and we granted their applications for interlocutory appeal. These appeals follow.

---

[8] Floyd Medical also asserted that Golden's complaint was barred by her failure to comply with the conditions set forth in the district court's order granting her motion to voluntarily dismiss the original federal action. See n. 3, supra.

1. *New Claims in the Renewal Action.* In her first enumeration, Golden contends that the trial court erred in granting Floyd Medical's motion to dismiss related to her allegations of vicarious liability arising from Gaylor's failure to notify the attending physician of the sepsis alert. The true gravamen of Golden's argument is that the renewal action did not add any claims to — and was therefore the same as — the original federal action, such that her claim survived the voluntary dismissal and remained viable for the renewal action. We do not agree.

Golden's June 30, 2018 complaint in the original federal action did not identify Gaylor or include any claims based upon her alleged acts or omissions. During depositions taken between June 29 and July 2, 2020, Golden apparently learned of Gaylor's role for the first time. However, it was not until November 20, 2020 — more than four months after this revelation and ten days after the close of the extended discovery period — that Golden moved to amend her complaint to add "[*n*]*ew allegations of facts*" for "vicarious or imputed liability for the negligent or grossly negligent acts and omissions of [Gaylor.]" (Emphasis supplied.) The district court

10

observed, in its order striking Golden's experts, that one of the tardy expert reports "addresse[d], *for the first time*, alleged deviations in the standard of care by Sharon Gaylor." (Emphasis supplied.) In granting Golden's subsequent motion to voluntarily dismiss her complaint, the district court also dismissed her motion to amend as moot. Accordingly, the record demonstrates that there was no claim against the defendants based upon Gaylor's acts or omissions in the original federal action.

When Golden filed her renewal action, she included these new allegations of fact based upon Gaylor's acts and omissions in support of her claim for medical malpractice in Count 1 and included a separate claim for ordinary negligence in Count 2 alleging, for the first time, that the defendants were vicariously liable for Gaynor's negligence. Floyd Medical moved to dismiss Golden's claim for ordinary negligence, arguing that Count 2 of the renewal action asserted a new claim not brought in the original federal action. The trial court agreed, concluding that Golden's claim for ordinary negligence was barred by the two-year statute of limitation because it was not raised in the original federal action.

(a) *Statute of Limitation*. The general statute of limitation for injuries to the person provides that such action "shall be brought within two years after the right of action accrues[.]" OCGA § 9-3-33. Similarly, OCGA § 9-3-71 (a) provides that "an

11

action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." See also OCGA §§ 9-3-70, 9-3-71 (c). In this case, Golden's causes of action accrued, at the latest, on July 2, 2016; therefore, the statute of limitation for Golden's claims of both medical malpractice and ordinary negligence expired, at the latest, on July 2, 2018, two years after the alleged failure to properly diagnose sepsis occurred. Golden filed the original action on June 30, 2018, but voluntarily dismissed the original action on August 30, 2021.

(b) *Claim Added in Renewal Action.* Accordingly, we turn next to whether Golden's renewal action presented a substantially similar cause of action or a new cause of action. If her claim in the renewal action is substantially similar to the original action, then it survived the voluntary dismissal to remain viable in the renewal action.

"[L]ong-standing and well-settled precedent" under Georgia's renewal statute, OCGA § 9-2-61, establishes that

> [a] properly filed renewal action stands on the same footing as the original action with respect to statutes of limitation. . . . [T]o be a good renewal of an original suit, so as to suspend the running of the statute of limitations under OCGA § 9-2-61, the new petition must be substantially

12

the same both as to the cause of action and as to the essential parties. . . . Thus, if a plaintiff files a renewal suit after the applicable limitations period has expired and adds a new cause of action based on a new theory of recovery, the renewal statute is inapplicable to save the claim from being time-barred.

(Citations and punctuation omitted.) *Coen v. Aptean, Inc*., 356 Ga. App. 468, 470 (1) (847 SE2d 835) (2020); see also *Aaron v. Jekyll Island State Park Auth.*, 348 Ga. App. 332, 334 (822 SE2d 829) (2019). Stated differently, "a defendant's liability cannot be enlarged beyond that indicated by the pleadings in the first case." (Citation and punctuation omitted.) *Carter v. VistaCare, LLC*, 335 Ga. App. 616, 619 (2) (782 SE2d 678) (2016).[9]

Here, in dismissing Count 2 of the renewal action, the trial court found that because Golden had not asserted a claim for ordinary negligence in the original

_____

[9] While it is true that "the renewal action need not be identical to the first one[,]" *Cushing v. Cohen*, 323 Ga. App. 497, 507 (3) (746 SE2d 898) (2013), *Cushing* itself sheds little light on this principle inasmuch as the description of the original and renewal actions are virtually identical. See also *Coen*, 356 Ga. App. at 470 (1) (noting that plaintiff filed "claims for abusive litigation under OCGA § 51-7-80 et seq. in both" the original and renewal actions; as a result, causes of action were substantially similar). In the renewal action in this case, Golden brought both self-described new factual allegations and new claims following the dismissal of her original action. See, e.g., *Safi-Rafiq v. Balasubramaniam*, 298 Ga. App. 274, 275-276 (679 SE2d 822) (2009).

13

federal action, she could not assert one in her renewal action, as it constituted a new claim. The complaint in the original action shows that Golden's claims against the defendants were premised on the alleged professional negligence, rather than the ordinary negligence, of the attending physician, physician's assistant, and nurse practitioner. In its order, however, the trial court further found that Golden could not pursue a vicarious or imputed liability claim against the defendants based on any alleged professional negligence of Gaynor because such a claim relied on a new theory of recovery — nursing negligence. The trial court also held that Golden could only pursue her vicarious or imputed liability claims to the extent they were based on the conduct of the three professional defendants named individually in the original federal action.

We agree with the trial court on this point. As noted above, any cause of action asserted in a renewal action must be "substantially the same" as those asserted in the original lawsuit and those claims must be asserted against "substantially" the same parties. See *Coen*, 356 Ga. App. at 470 (1). Here, Golden asserted claims for vicarious liability against the defendants based on factual allegations concerning the attending physician, physician's assistant, and nurse practitioner. The original action did not identify Gaylor or include any factual allegations of her acts or omissions. As a result,

14

there was no claim against the defendants based upon Gaylor's acts or omissions when Golden voluntarily dismissed her original action.

As Golden notes, we have observed that a plaintiff filing a complaint alleging vicarious or imputed liability is not required to specifically name each professional defendant for whom the named defendant was allegedly responsible. *Oller v. Rockdale Hosp., LLC*, 342 Ga. App. 591, 593 (804 SE2d 166) (2017). Rather, to determine the scope of vicarious liability claims the plaintiff can pursue, the relevant question is whether the pleadings provide the named defendant "with sufficient notice of the agents for which it was allegedly responsible." Id. at 594; see also *Atlanta Women's Specialists, LLC v. Trabue*, 310 Ga. 331, 334-336 (2) (850 SE2d 748) (2020) (holding that, where a complaint did not name physician as a defendant, but contained allegations concerning the physician's conduct and alleged her employer was vicariously liable for the conduct of its employees, the defendant had notice that the physician's conduct was being asserted as a basis for its liability).

Here, there was no such notice. Golden's original action did not contain any claims or factual allegations concerning Gaylor or a computerized sepsis alert. During discovery in the original action, Golden apparently learned of both Gaylor's role and the sepsis alert, but did not move to amend her complaint to include these new facts

15

until after the close of discovery. Before the district court considered her motion, however, Golden voluntarily dismissed her original action. She then asserted these new factual allegations in support of Count 1 and new claims in Count 2 of her renewal action. As a result, Golden's renewal action was not "substantially the same both as to the cause of action and as to the essential parties" as her original action. Because the new claims were brought after the two-year statutes of limitation for personal injury and for medical malpractice expired, they are barred.[10]

2. *Ordinary or Professional Negligence*. In view of our decision in Division 1, supra, we need not resolve Golden's remaining argument that the trial court erroneously labeled her claim in Count 2 as professional, rather than ordinary,

---

[10] Golden's reliance on *Oller* is misplaced. There, this Court noted that the plaintiff identified the "physicians that attended [the decedent]" in the original action and the "treating physicians" in the renewal action. 342 Ga. App. at 593-594. As a result, we concluded that the defendant "was provided with sufficient notice of the agents for which it was allegedly responsible." Id. at 594. There is no such similarity here, as Gaylor and her role were strangers to the original action by any measure.

negligence.[11] Under either label, Golden's claim is barred by the two-year statute of limitation.

*Case No. A23A0119*

3. *Statute of Repose.* What is left, then, are Golden's claims of professional malpractice against Floyd Medical in Count 1 arising from factual allegations against the attending physician, physician's assistant, and nurse practitioner. Floyd Medical contends that the trial court erred in denying its motion to dismiss Count 1 based upon the statute of repose, arguing that the tolling provisions of Chief Justice Melton's COVID-19 judicial emergency orders do not apply to a statute of repose.

---

[11] In her renewal action, Golden alleged that a computer, "based on an algorithm that interpreted [Golden's] vital signs and lab results as being at risk of sepsis," generated a sepsis alert at 2:00 a.m. on July 2, 2016. Golden also asserted that Gaylor received the sepsis alert, but "negligently failed to take any action at all to notify" the attending physician, physician's assistant, or the nurse practitioner in violation of Floyd Medical's sepsis alert policy. Golden contended that the duty to report the sepsis alert "required no medical or nursing judgment, but simply required [Gaylor] to perform the ministerial act" of notifying the attending physician, physician's assistant, and the nurse practitioner of the sepsis alert. The trial court disagreed, finding that "[t]he allegations of negligence in Count 2 of the [renewal action] involve the exercise of professional skill and judgment within an area of expertise and states a claim for professional negligence even though [Golden] has labeled it as a claim for ordinary negligence. . . ." In that vein, see *Dodge County Hosp. Auth. v. Seay*, 366 Ga. App. 1, 4-7 (880 SE2d 571) (2022) (analyzing whether party's claims sound in professional malpractice or simple negligence).

17

Therefore, Floyd Medical asserts, Golden's renewal action is barred by the statute of repose because it was filed after the statute expired on July 2, 2021. We agree.

The parties do not contest that Golden's cause of action accrued, at the latest, on July 2, 2016 and that, unless some factor precluded its application, the five-year medical malpractice statute of repose expired on July 2, 2021. The district court granted Golden's motion to voluntarily dismiss the original federal action on August 30, 2021. Golden then filed the present renewal action on October 21, 2021, and Floyd Medical moved to dismiss the action asserting that it is barred by the statute of repose. The trial court rejected Floyd Medical's arguments and, in so doing, relied primarily on the March 27, 2020 "Guidance on Tolling Filing Deadlines" issued by Chief Justice Melton, which provided that the tolling provision of the March 14, 2020 Judicial Emergency Order applied to all "non-constitutional *filing* deadlines," even if not mentioned specifically in the March 14 order. (Emphasis supplied.) Citing this statement, the trial court reasoned that because the statute of repose was not a filing deadline imposed by the Georgia Constitution, the five-year period of repose applicable to Golden's claims was tolled for the 122-day period between March 14, 2020 and July 14, 2020. The trial court therefore concluded that the statute of repose expired on October 31, 2021, 10 days after Golden filed her renewal action.

18

(a) *Statute of Repose Generally*. We recently noted that

> OCGA § 9-3-71 (a) requires that an action for medical malpractice be
> brought within two years from the date of injury. Under OCGA § 9-3-71
> (b), "*in no event* may an action for medical malpractice be brought more
> than five years after the date on which the negligent or wrongful act or
> omission occurred." Thus, Subsection (a) of this Code section is
> intended to create a two-year statute of limitations. Subsection (b) of this
> Code section is intended to create a five-year statute of ultimate repose
> and abrogation.

(Citations and punctuation omitted; emphasis supplied.) *Smith v. Kayfan*, 364 Ga.
App. 651, 654 (874 SE2d 465) (2022); see also *Coen v. Aptean, Inc.*, 346 Ga. App.
815, 829-830 (4) (b) (816 SE2d 64) (2018), vacated in part on other grounds by *Coen*,
356 Ga. App. at 469 (discussing importance of prohibitive language in statutes of
repose). In addition,

> [t]he distinction between the statute of limitation and the statute of
> repose in OCGA § 9-3-71 is clear. A statute of limitation is a procedural
> rule limiting the time in which a party may bring an action for a right
> which has already accrued. A statute of ultimate repose delineates a time
> period in which a right may accrue. If the injury occurs outside that
> period, it is not actionable. A statute of repose stands as an unyielding
> barrier to a plaintiff's right of action. *The statute of repose is absolute*;
> the bar of the statute of limitation is contingent. The statute of repose

19

destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.

(Citation omitted; emphasis supplied.) *Coen*, 346 Ga. App. at 828-829 (4) (b); see also *Southern States Chemical v. Tampa Tank & Welding*, No. S23A0273, 2023 Ga. LEXIS 115, \*17 (1) (b) (Ga., May 31, 2023) (concluding that statutes of repose provide substantive rights, in part, because they extinguish "a plaintiff's right to bring a cause of action after the repose deadline and [because] a defendant has the right to rely on the certainty of the repose deadline"); *Simmons v. Sonyika*, 279 Ga. 378, 379 (614 SE2d 27) (2005). As a result, "by definition, a statute of ultimate repose cannot be tolled." (Citation and punctuation omitted.) *Simmons*, 279 Ga. at 380; see also *Smith*, 364 Ga. App. at 654 (holding that OCGA § 9-3-71 "provides a bright-line rule that the statute of ultimate repose *cannot* be tolled") (emphasis supplied). Therefore, "[u]nlike statutes of limitation, statutes of repose may not be tolled *for any reason*, as tolling would deprive the defendant of the certainty of the repose deadline and thereby defeat the purpose of a statute of repose." (Citation and punctuation omitted; emphasis supplied.) *Simmons*, 279 Ga. at 380; see also *Rosenberg v. Falling Water, Inc.*, 302 Ga. App. 78, 80-81 (1) (a) (690 SE2d 183) (2009). Indeed, our Supreme Court held that

20

[w]hether by discovery, which delays the accrual of the action, or by infancy, incompetency, or fraud, which may toll the statute of limitation for up to five years, nothing stops the abrogation of the action by the statute of repose; five years after the negligent or wrongful act or omission occurred, despite any non-discovery or any tolling, the medical malpractice action or potential action ceases to exist by abrogation of law under the statute of repose.

(Citation and punctuation omitted.) *Simmons*, 279 Ga. at 380.[12]

In this case, Golden's claims against Floyd Medical accrued on July 2, 2016. Therefore, the five-year statute of repose for medical malpractice actions closed on July 2, 2021. Golden voluntarily dismissed her original action on August 30, 2021

---

[12] There is a single recognized exception to this "unyielding" rule:

[I]n certain narrow circumstances, a defendant may be equitably estopped from raising the statute of repose as a defense. In order for this to apply, however, a plaintiff must show fraud by offering evidence of a known failure to reveal negligence. . . . In other words, there must be a separate and independent act of fraud.

(Citations and punctuation omitted.) *Smith*, 364 Ga. App. at 654-655; see also *Wilhelm v. Houston County*, 310 Ga. App. 506, 509 (1) (c) (713 SE2d 660) (2011); *Wilson v. Obstetrics & Gynecology of Atlanta*, 304 Ga. App. 300, 305 (2) (696 SE2d 339) (2010). However, no such allegations of fraud have been raised in this case and, as a result, the lone defense to the bar imposed by the statute of repose is not applicable.

and did not file her renewal action until October 21, 2021. Accordingly, unless there is some basis recognized under Georgia law to toll the statute of repose, Golden's claim is barred.

(b) *Chief Justice Melton's Emergency Orders*. In 2004, the General Assembly codified OCGA § 38-3-62 as part of the Georgia Emergency Management Act. OCGA § 38-3-62 (a) (1) provides that

> [a]n authorized judicial official in an order declaring a judicial emergency, or in an order modifying or extending a judicial emergency order, is authorized to suspend, toll, extend, or otherwise grant relief from deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters, including, but not limited to: . . . [a] statute of limitation[.]

A "judicial emergency" is defined, in part, as any of a number of serious emergencies

> when, as determined by an authorized judicial official, the emergency substantially endangers or infringes upon the normal functioning of the judicial system, the ability of persons to avail themselves of the judicial system, or the ability of litigants or others to have access to the courts or to meet schedules or time deadlines imposed by court order or rule, statute, or administrative rule or regulation.

OCGA § 38-3-60 (2) (D).

22

In response to the burgeoning COVID-19 pandemic, Chief Justice Melton entered an Order Declaring a Statewide Judicial Emergency (the "Judicial Emergency Order") on March 14, 2020[13] which provided, in relevant part:

> Pursuant to OCGA § 38-3-62, during the period of this Order, the undersigned hereby suspends, tolls, extends, and otherwise grants relief from any deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters, including, but not limited to any: (1) *statute of limitation*; (2) time within which to issue a warrant; (3) time within which to try a case for which a demand for speedy trial has been filed; (4) time within which to hold the commitment hearing; (5) deadline or other schedule regarding the detention of the juvenile; (6) time within which to return a bill of indictment or an accusation or to bring a matter before a grand jury; (7) time within which to file a writ of habeas corpus; (8) time within which discovery or any aspect thereof is to be completed; (9) time within which to serve a party; (10) time within which to appeal or to seek the right to appeal any order, ruling, or other determination; and (11) such other legal proceedings is determined to be necessary by the authorized judicial official.[14] (Emphasis supplied.)

---

[13] The chief justice of the Georgia Supreme Court is an "[a]uthorized judicial official" under the Emergency Management Act. See OCGA § 38-3-60 (1) (A).

[14] These provisions merely tracked the language of OCGA § 38-3-62 (a) (1) - (11).

Of note, the Judicial Emergency Order does not specifically mention statutes of repose.[15]

(c) *Subsequent Emergency Orders*. On March 27, 2020, Chief Justice Melton issued a document entitled "Guidance on Tolling Filing Deadlines," clarifying that the tolling provision of the Judicial Emergency Order applied to all "non-constitutional *filing* deadlines," even if not mentioned specifically in the March 14 order. (Emphasis supplied.)

Next, Chief Justice Melton issued further guidance on April 6, 2020, entitled "Tolling Statutes of Limitation Under the Chief Justice's Order Declaring Statewide Judicial Emergency," which stated that:

> the tolling of a statute of limitation suspends the running of the period of limitation, but it does not reset the period of limitation. If the period of limitation for a particular cause of action commenced prior to March 14, 2020—that is, if the "clock" had started to run before the entry of the Chief Justice's order—the running of the period of limitation was suspended on March 14, and the running of the period will resume when the tolling provision of the March 14 declaration has expired or is

---

[15] As claimed by Golden's counsel during oral argument, the reason statutes of repose were not listed in the Emergency Order is not included in the record. However, Golden's counsel offered that a committee was formed in response to the COVID-19 pandemic and that he was asked to "list all deadlines you can think of," and that he "just didn't think of [statutes of repose] in that moment." See n. 14 supra.

24

otherwise terminated. If the event that triggers the running of a period of limitation occurred on or after March 14—that is, if the "clock" had not started to run before a statewide judicial emergency was declared—the period of limitation will not begin to run until the tolling provision of the March 14 declaration has expired or is otherwise terminated. In either circumstance, whatever time remained in the period of limitation as of March 14 will still remain when the tolling provision of the March 14 declaration has expired or is otherwise terminated.

The Fourth Order Extending Declaration of Statewide Judicial Emergency, issued July 14, 2020, provided that "[a]ll other deadlines imposed on litigants [by statutes, rules, regulations, or court orders in civil and criminal cases and administrative actions that have been suspended, tolled, extended, or otherwise relieved by the March 14, 2020 Order] shall be reimposed effective July 14, 2020[.]" (Emphasis omitted.)

(d) *Analysis*. For the following reasons, we conclude that, despite the enactment of OCGA § 38-3-62 in 2004 and Chief Justice Melton's judicial emergency orders, statutes of repose are not included within the ambit of the emergency orders. Accordingly, the emergency orders did not toll the statute of repose, and Golden's claims are therefore barred.

Beginning in at least 1988, our courts have reinforced the principle that, "by definition, a statute of ultimate repose *cannot* be tolled. . . ." (Punctuation omitted; emphasis supplied.) *Hill v. Fordham*, 186 Ga. App. 354, 357 (2) (367 SE2d 128) (1988). Importantly, in an unbroken line of cases, our courts have continued to hold fast to this principle to this day — even after the codification of OCGA § 38-3-62. See *Simmons*, 279 Ga. at 380 ("[B]y definition, a statute of ultimate repose *cannot* be tolled[.]") (citation and punctuation omitted; emphasis supplied); *Smith*, 364 Ga. App. at 651, 654-655 (noting the "bright-line rule that the statute of ultimate repose *cannot* be tolled") (emphasis supplied); *Rosenberg*, 302 Ga. App. at 80 (1) (a) ("[U]nlike statutes of limitation, statutes of repose may not be tolled *for any reason*[.]") (citation and punctuation omitted; emphasis supplied). We are, of course, bound to follow the decisions of our Supreme Court. See generally Ga. Const. of 1983, Art. VI, § VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents."); see also *Simmons*, 279 Ga. at 380.

Of further note, statutes of limitation are specifically included in the categories of matters which may be tolled pursuant to both OCGA § 38-3-62 and the judicial emergency orders, but statutes of repose are not. While we recognize that neither the emergency order nor the statute were intended to contain exhaustive listings, the

26

distinction between statutes of limitation and repose is not a meaningless one which can be cured by simple reliance upon the clause, "including but not limited to[.]" See *Simmons*, 279 Ga. at 379 ("A statute of repose stands as an unyielding barrier to a plaintiff's right of action. The statute of repose is absolute; the bar of the statute of limitation is contingent.") (citation and punctuation omitted). In other words, the statute of repose is not a mere "*filing* deadline," but a specific date upon which a cause of action is abrogated and simply ceases to exist. See id. ("The statute of repose destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.") (citation omitted). Therefore, "[u]nlike statutes of limitation, statutes of repose may not be tolled *for any reason*, as tolling would deprive the defendant of the certainty of the repose deadline and thereby defeat the purpose of a statute of repose." (Citation and punctuation omitted; emphasis supplied.) Id. at 380. To that point, our law contains multiple provisions identifying when a statute of limitation may be tolled. See generally *Southern States Chemical*, 2023 Ga. LEXIS 115, *18 (1) (b) ("[A]lthough fraud, among other things, can toll a statute of limitations, we have held that 'nothing stops the abrogation of the action by the statute of repose[.]'") (citation and punctuation omitted); *Stubbs v. Hall*, 308 Ga. 354, 367 (4) (840 SE2d 407) (2020) (noting statutes of limitation may be tolled

27

by incompetence, youth, disability, discovery of fraud, and the like); *Robinson v. Boyd*, 288 Ga. 53, 57 (2) (701 SE2d 165) (2010) ("[S]tatutes of limitation . . . may be tolled for many reasons."). As we have noted, there are no such provisions in our law applicable to statutes of repose.[16]

Our recent decision in *Lewis v. Gwinnett County* does not compel a different result. 367 Ga. App. 241 (885 SE2d 320) (2023). In *Lewis*, we held that the March 14, 2020 Judicial Emergency Order tolled the time for providing an ante litem notice of a plaintiff's negligence claim to Gwinnett County. Id. at 242, 245. A factor in our analysis was that the Judicial Emergency Order "grants relief from any deadlines or other time schedules or filing requirements . . . whether in civil or criminal cases or administrative matters, *including but not limited to any*. . . ." (Emphasis supplied.) Id. at 245. However, two additional factors suggest that statutes of repose were not

---

[16] In this case, Golden's argument that "any means every" only goes so far — both the Judicial Emergency Order and *Simmons* apply the term "any," with the effect of one, ostensibly, that statutes of repose could be tolled in certain circumstances, and the effect of the other that statutes of repose cannot be tolled. Compare March 14, 2020 Emergency Order ("including, but not limited to *any*") (emphasis supplied) and *Simmons*, 279 Ga. at 380 ("Unlike statutes of limitation, statutes of repose may not be tolled for *any* reason[.]") (citation and punctuation omitted; emphasis supplied). Moreover, "any" does not appear in the "including, but not limited to" clause of OCGA § 38-3-62, which authorized the judicial emergency orders.

intended to be included within the permissive "including but not limited to" provision.

First, like statutes of limitation, our courts have recognized instances in which ante litem periods may be tolled. See, e.g., *Carter v. Glenn*, 243 Ga. App. 544, 548 (2) (533 SE2d 109) (2000) (holding plaintiff did not make sufficient showing of mental incompetency to toll ante litem notice under OCGA § 9-3-90); *City of Barnesville v. Powell*, 124 Ga. App. 132 (1) (183 SE2d 55) (1971) (holding that ante litem notice tolled by infancy), disapproved in part on other grounds by *Ga. Dept. of Public Safety v. Ragsdale*, 308 Ga. 210, 214, n. 7 (839 SE2d 541) (2020); compare id. at 214-215 (holding OCGA § 9-3-99 did not toll the period for presenting ante litem notice under Georgia Tort Claims Act, OCGA § 50-21-26 (a) (1)) and *Griggs v. Miller*, 363 Ga. App. 82, 88 (3) (870 SE2d 578) (2022) (finding that statutory tolling provisions did not toll foreclosure reversionary period "[b]ecause [it] is not a statute of limitation"). Once again, our law contains no such authority applicable to statutes of repose. To the contrary, our courts have consistently highlighted the potentially harsh and unforgiving nature of statutes of repose. See, e.g., *Simmons*, 279 Ga. at 380; *Smith*, 364 Ga. App. at 651, 654-655. As a result, there is no consonant

29

authority to ante litem notices which would authorize tolling of the medical malpractice statute of repose in this case.

Second, we are not persuaded by Golden's argument that the subsequent enactment of the Judicial Emergency Act of 2004, after the medical malpractice statute of repose in 1985, indicated that statutes of repose were subject to tolling in judicial emergencies. This argument is belied by multiple cases, including cases decided by our Supreme Court, following passage of the Judicial Emergency Act holding unequivocally that the statute of repose cannot be tolled.[17] See *Southern States Chemical*, 2023 Ga. LEXIS 115, *18 (1) (b) ("[W]e have held that '*nothing stops the abrogation of the action by the statute of repose[.]*'") (citation and punctuation omitted; emphasis supplied); *Simmons*, 279 Ga. at 380; *Rosenberg*, 302 Ga. App. at 80 (1) (a) ("[U]nlike statutes of limitation, statutes of repose may not be tolled for any reason[.]") (citation and punctuation omitted), aff'd, 289 Ga. 57, 59 (709 SE2d 227) (2011) ("by definition, a statute of ultimate repose cannot be tolled")

[17] Accordingly, this case is dissimilar to cases cited in Golden's appellee's brief in which our Supreme Court held that "statutes can displace decisional law." See, e.g., *Johns v. Suzuki Motor of America*, 310 Ga. 159, 164-165 (3) (850 SE2d 59) (2020). In *Johns*, for example, the court noted that all of the cases upon which the appellants relied had been decided *before* the enactment of a statute. Id. Here, there is precedent *after* the enactment of the Emergency Management Act that provides that statues of repose cannot be tolled for any reason, and we cannot ignore that precedent.

(citation and punctuation omitted); see also *Rosenberg*, 289 Ga. at 65-66 (2) (noting that equitable estoppel does not toll statute of repose, but simply prevents party from raising defense due to the party's conduct) (Hunstein, C. J., dissenting); *Deen v. Stevens*, 287 Ga. 597, 616 (698 SE2d 321) (2010) ("As we have recognized, a statute of ultimate repose cannot be tolled *for any reason*.") (Hunstein, C. J., dissenting) (emphasis in original and supplied). In the absence of authority to the contrary, "[i]t is our duty to presume that in each and every case the Supreme Court has done its duty and reconciled all of its holdings as its own duty demands." *Garrett v. Heisler*, 149 Ga. App. 240, 245 (253 SE2d 863) (1979) (McMurray, J., concurring in part and dissenting in part).

Accordingly, we hold that the five-year medical malpractice statute of repose, codified at OCGA § 9-3-71 (b), is not tolled by the judicial emergency orders. As applied to this case, the statute of repose expired on July 2, 2021, and Golden voluntarily dismissed her action against Floyd Medical on August 30, 2021, such that there was then no action pending against Floyd Medical after the statute expired. It necessarily follows that Golden's remaining claims in Count 1 are barred.[18]

---

[18] Even were we to agree with Golden that the Judicial Emergency Order tolled the statute of repose for the reasons asserted in her brief, such a ruling would necessarily require that we ignore the binding precedent from our Supreme Court we

4. *Conditional Voluntary Dismissal*. Because we have concluded that the counts of Golden's renewal action are barred by either the two-year statute of limitation or the five-year medical malpractice statute of repose, we need not consider Floyd Medical's remaining argument that Golden's renewal action is precluded by her purported failure to satisfy the district court's conditions[19] in its voluntary dismissal order, including Golden's payment of certain attorney fees and expenses incurred by the defendants in the original federal action.[20]

In sum, regardless of whether it is characterized as ordinary or professional negligence, Count 2 of Golden's renewal action presented a new claim not raised in

---

have cited, issued after passage of the Emergency Management Act, holding that a statute of repose cannot be tolled for any reason. This, we are not permitted to do. See n. 17, supra.

[19] See n. 3, supra. The district court's dismissal order provided that:

The Court GRANTS Plaintiff's Motion for Voluntary Dismissal. The Court DISMISSES Plaintiff's Complaint WITHOUT PREJUDICE on the following conditions: (1) Defendants shall file a brief in bill of costs on "wasted" work within 10 days of the entry of this order, and Plaintiff shall file a response within 10 days of Defendants' filing, and (2) the discovery in this case will be incorporated into any subsequent action.

[20] Even so, we note that there does not appear to be a dispute that Golden ultimately paid the amount found to be due by the district court.

the original action; as a result, Count 2 is barred by the two-year statute of limitation for personal injuries. Next, Golden's claims against Floyd Medical in Count 1, which are based upon new factual allegations arising from Gaylor's acts or omissions, asserted a new claim which was not part of the original action, and is likewise precluded. Finally, Golden's remaining claims against Floyd Medical in Count 1 of the renewal action, grounded in allegations against the attending physician, physician's assistant, and nurse in charge, are barred by the "unyielding" five-year medical malpractice statute of repose. Accordingly, we affirm in part and reverse in part the trial court's judgment, and we remand these cases to the trial court with instruction to dismiss Golden's renewal action.

*Judgments affirmed in part, reversed in part, and cases remanded with instruction. Miller, P. J., and Mercier, J., concur.*